**James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**The GOOD SHEPHERD HOSPITAL, a corporation, Defendant.**

**Civ. A. No. 4945.**

United States District Court, E. D. Texas, Tyler Division.

April 26, 1971.

## FINDINGS OF FACT
## AND
## CONCLUSIONS OF LAW

STEGER, District Judge.

### Findings of Fact

1. On December 26, 1968 the Plaintiff filed a complaint against the Defendant to enjoin it from violating the provisions of 6(d) and 15(a) (2) of the Fair Labor Standards Act as amended and such other and further relief as may be necessary and appropriate including the restraint of any withholding of payment of wages found to be due to employees under the Act.

2. That jurisdiction of this Court was conferred by Section 17 of the Fair Labor Standards Act as amended.

3. The Defendant is a Texas Corporation located at Fifth and Marshall Streets, Longview, Gregg County, Texas, within the jurisdiction of this Court and is and at all times hereinafter mentioned engaged in operating a hospital. It is a non-profit corporation operating under a Board appointed by the Bishop of the Episcopal Diocese of Texas.

4. The Defendant, The Good Shepherd Hospital, did not become subject to the provisons of Section 6(d) and Section

15(a) (2) of the Act until February 1, 1967.

5. The discrimination on the basis of sex charged in the complaint is not limited to any department of the hospital, but refers to all aides and orderlies employed by the Defendant in its facility.

6. All aides have been employed on a full time basis. Orderlies have been employed on a full time basis but additional orderlies have been employed as summer time replacements on a temporary basis.

7. Permanent employees are placed on probation (training period for three months. There are training courses for the aides conducted by Mrs. Elliott. There is a course of training for orderlies also by Mrs. Elliott, Medical Doctors and Senior Orderlies. This has not applied to orderlies having adequate prior training or experience. The training of the aides and orderlies differs in the following respects that the orderly is:

(1) Taught the art of moving and lifting heavy, obese and aged persons;

(2) Taught male catheterizations and related services by Urologists;

(3) Taught orthopedic services and use of, setting up traction equipment by senior orderly and by orthopedic surgeons;

(4) Taught the responsibility of Hospital wide service and knowledge of location of equipment of entire facility;

(5) Taught and trained for emergency room work by Doctors and senior orderlies;

(6) Taught Sterile procedures as opposed to aseptic procedures only taught to the aide by nursing personnel;

while Nurses Aides are not taught the above procedures.

8. Good Shepherd Hospital has had no policy prohibition against an orderly being a female or a male being a nurses aide though as a practical matter all aides have been females and all orderlies have been males.

9. The head orderly has been Mr. Alvin Murphy whose salary has increased from period to period because of exceptional ability and tenure while performing added duties of training and teaching new orderlies. This has been true of the orderlies Prints Amerson, Gene Draper and James Bell but in a somewhat lesser degree.

10. (a) Between February 1, 1967 and February 1, 1969 there were 126 aides and 34 orderlies employed but the average ratio of aides to orderlies over that period was 45 aides for 8 orderlies. Total hours paid 126 aides was $176,853.50 hours and for 34 orderlies $27,914.25 hours in the same period.

(b) Between February 2, 1969 and March 14, 1970 there were 110 aides employed and 22 orderlies, total hours paid 110 aides $108,678.25; total hours paid 22 orderlies, $11,468.25.

11. The ratio of orderlies to aides varies and has varied during the entire period. The great majority of the time there has been one or more orderlies on each shift.

12. Wage Scale

(a) During the period from February 1, 1967 to the present date the following pay scales have been applied to orderlies:

1967—1.25 per hour

1968—1.25 per hour

(1.52 per hour to experienced)

(1.75 to Chief Orderly Murphy)

1969—1.52 per hour

(2.08 to Chief Orderly Murphy)

1970—1.65 per hour

(2.08 to Chief Orderly Murphy)

(Plaintiff stated in argument to Court Chief Orderly Murphy was not a proper subject for comparison purposes).

(b) During the period from February 1, 1967 to the present date the following pay scales have been applied to nurses aides:

1967—1.00 per hour

1968—1.16 per hour

1.30 per hour

1969—1.36 per hour

1.50 per hour

1970—1.60 per hour

13. In the hospital as a whole there are 192 beds. There are 3 floors. The hospital has two emergency rooms on the lower floor. The hospital has a Central Supply Station but Nurses Stations are on each floor. Orthopedic, cystoscopic, x-ray and cast equipment are kept in separate rooms. There is a call system over the hospital area to all floors.

14. At Good Shepherd Hospital Job Requirements or Descriptions for an Orderly and for an Aide reflected major differences in duties of Aides and Orderlies. These differences existed in actual duties performed by Aides and Orderlies.

15. The Court finds that the job of orderly is separate and distinct from the job of the aide and requires greater skill, effort and responsibility. It is performed under less attractive working conditions than those enjoyed by the Nurses Aides, with the Orderly job being fraught with more personal risk and danger of bodily injury or harm.

While the orderly and the aide do perform certain functions which are similar in some respects, still (even in addition to noninterchangeable duties depending on sex of the patient being administered to) there are important and basic duties and responsibilities of the orderly which are not performed by the aide:

(1) The orderly has responsibility for calls to all parts of the hospital and not limited in any way to one unit or floor as the aide is limited. This includes emergency calls also known as stat calls arising from security problems or other emergencies. The orderly is not assigned a certain floor or a certain number of rooms or patients, for the routine duties also performed by the nurses aides. The orderly has the whole hospital and its operation as his responsibility with much duty performed without direct supervision—working on his own and using his special skills and training. This is and has been true at all times since February 1, 1967.

(2) The orderly has responsibility for security and protection for aides, personnel, visitors and patients throughout the hospital. There are two lockup rooms where alcoholic and psychiatric patients are placed, and here restraint is implemented by the orderly for the good of the patient to prevent his injuring himself or others. The very presence of the orderly has been a deterrent to trouble. It gave a feeling of security to aides and nurses and had a helpful psychological effect upon the hospital personnel. The superior strength and training of the orderly enables him to cope with the situation where the aide could not successfully do so. A significant portion of the time of the orderly is devoted to actual duty in this area.

In fire and disaster drills and during the implementation of such plans the importance of the function of the orderly is paramount because of strength, maturity, training, and experience, and because his presence lends confidence and reliance.

(3) The orderly has special training to do and does male catheterizations which is an extremely important hospital duty, calling for skill and training in sterile techniques not possessed by aides. Aides do not even perform catheterizations of female patients. Male catheterization is an important hospital function and is a special skill developed by training from Urologists, and the senior orderly. This duty was performed by orderlies ranging from several a day to several a week consuming up to 45 minutes of time. The hospital rules have prohibited nurses aides from performing this procedure (even on females) since February 1, 1967. The importance of the orderly job is not confined to actual catheterizations done—but his availability to do them. There is no schedule when this critical work may have to be done.

(4) The orderly has special training and duties in assisting the orthopedic

surgeon. Doctors, nurses, aides and orderlies so testified. The orderly sets up all different types of traction devices ordered by the doctor. Orderlies performed these duties from several times a week to several times a month and time consumed depending on type of traction would run from 15 to 45 minutes. Some are rather complex and varied in the way in which they are set up. Knowledge, skill and strength play an important part in this duty which is not performed by aides. The orderly assists the orthopedic surgeon in the application of casts—this may require long periods of rigid holding of a limb, or body in one position by the orderly. This requires strength and effort which the aide does not possess. This has been true of the orderly since February 1, 1967. The orderlies are fully responsible for the care and maintenance of traction equipment, in storage and in use, including such items as a circular electric bed and the traction equipment cart.

Again availability of the trained orderly to do the work when called is of importance to the hospital operation.

(5) The orderlies had great responsibility in their work in the emergency room and all work there. This work is demanding in that the lifting and moving from ambulance to stretcher to treatment and examination beds calls for strength, effort and exertion. It calls for skill and training in moving, lifting and transporting the patient which the orderly has. Aides do not work in the emergency rooms. The orderly helps the doctor and the nurses with the wounded, bleeding, injured, unconscious persons of both sexes. Orderlies helped restrain those violent because of pain, mental condition or drunkenness. Frequency of work in emergency room increased on night shifts and on weekends. Time spent on each occasion could vary from a few minutes to an hour. Orderlies were called upon several times a week to four or five times each shift. Weekends where traffic accidents fill the emergency room call for exhausting work by the orderly under trying conditions. This involved relatives in grief and distress, persons under influence of alcohol and the seriously injured. These duties and this work of the orderly has existed since February 1, 1967.

(6) The orderly has had more work to do than the aides. The aide's work rarely calls for overtime and is not performed under tension and strain. The orderly's work is continuous, demanding and tiring. It involves some personal danger and risk. Work of orderlies during the period involved has been so rushing as to prevent rest or scheduled coffee breaks or lunch periods. The aide does not perform her duties under such conditions. Exhaustive studies by expert personnel and industrial engineers show that the nurses aide averages approximately two times as much nonactive or non-productive time as does the orderly.

(7) The work of the orderly is arduous, requiring much more physical effort and strength than the work of the aide. Availability of such strength even on standby is vital to the smooth operation of the hospital. Loading heavy and hard to control oxygen cylinders, transporting these through the hospital and moving heavy hospital equipment calls for extra strength and effort. Orderlies spend as much as 25% of their time in this type of such lifting work. This has been true of the duties of the orderlies at Good Shepherd Hospital continuously since February 1, 1967. The additional duties of the orderly over and above those of the nurses aide in the area of greater effort are of an economic value commensurate with the pay differential which has existed between the aide and orderly jobs at Good Shepherd Hospital since February 1, 1967.

(8) Orderlies are required as a routine assignment to ambulate convalescing, surgical, stroke and orthopedic patients of both sexes. This includes instruction in the use of walkers and crutches where patients have confidence in strength and ability of the orderly.

(9) The Court finds that the witnesses Howell Northcutt Forman, Jr. and J. T. Elrod, Ph.D. were qualified experts

in the field of Job Evaluation and Personnel Engineering; that they conducted a complete and detailed survey with personal observaton and sampling of the duties of the respective jobs of orderlies and aides according to recognized techniques in their field; that based on this survey and investigation said qualified experts rendered valid scientific and technical determinations that major differences existed between the jobs of aides and orderlies, whereby the orderly work required greater skill, effort and responsibility.

## Conclusions of Law

The Court concludes that:

1. Plaintiff has not met its burden of proof to show the work and duties performed by Defendant's aides and orderlies are substantially identical. Even though all orderlies at this date are males and all aides are females, it is concluded that since February 1, 1967 the higher rate is paid to the orderly because he is an orderly performing the duties of an orderly which are different from those of an aide, and not because he is a male. See Wirtz v. Koller Craft Plastic Products, Inc., 296 F.Supp. 1195, 1199 [Paragraph (5).] Kilpatrick v. Sweet, D.C., 262 F.Supp. 561, 564.

2. Work performed by the orderlies during the period in question required greater and different skill, effort and responsibility from that of the aide.

A. SKILL—The orderly was trained to perform catheterizations and did perform them, while female catheterizations were performed only by licensed nurses not aides. The orderly was trained in various duties to assist orthopedic surgeons in setting up traction equipment; helping in the application and removal of casts. The orderly was trained in the use of sterile procedures while the aide was limited to aseptic procedures. Orderlies were trained and skilled in the correct methods of lifting patients par-

ticularly critical, obese, or aged cases. These matters are illustrative and establish the difference of the skill required and employed by the orderly in his work, from the nurses aide and her work. As to skill required of the orderly and aide jobs the Plaintiff has not shown that the work is substantially identical. It is not enough to show "similarity" or that the work is "comparable."

B. EFFORT—The work of the orderly requires more effort in the area of lifting, handling equipment, moving, turning and transporting patients. The orderly has more work, is active a much greater per cent of his working time as shown by time and work studies. Also, in this area the strength and experience of the orderly is put to use in security, fire drills, disaster drills, handling of demented, drunk and unruly patients. Aides call for the help of the orderlies in these fields, an acknowledgment of the difference and strength and effort in respective jobs—not merely a requirement, but work that in many instances aides are physically unable to perform. The Plaintiff has not met its burden of proof to show by the greater weight and degree of credible testimony that the nurses aide's work is "substantially equal" to the orderly's work as to the effort required. The lifting and strength demanding work of the orderly is not merely occasional but is shown to be one of the main functions that is demanded of the orderly with great frequency and regularity. Use of orderlies in the foregoing work is an operational necessity. The Hospital is dependent on the orderly for the performance of the job cycle. It is clear that from an economic standpoint the Hospital could have hired all aides and no orderlies if the jobs were identical and thus saved any pay differential. The Hospital was dependent upon the stronger, better trained orderlies, not by preference but as a matter of sound hospital management. During the entire time period the effort exerted by the orderly was substantially and signifi-

cantly greater than that exerted by the aide. These additional duties are of economic value commensurate with the pay differential.

C. RESPONSIBILITY—The Plaintiff has not met its burden of proof in showing that the aide and orderly jobs were substantially equal and identical, as to responsibility. The orderly works out of Central Supply and his work carried him throughout the hospital. He was subject to emergency or "Stat" calls at all times wherever he might be. He had responsibility for storage and maintenance for various types of equipment with which he works. Important duties of the Orderly in the responsibility area were in the security, fire and disaster, emergency room and morgue areas. The aide had no responsibility in these areas and was assigned to a specific area or patients. The orderly had less supervision, was required to accept greater responsibilities and develop initiative in the performance of orderly duties. See Wirtz v. Muskogee Jones Store Company, D.C., 293 F.Supp. 1034. The Court concludes that it is shown as a matter of law that the aide does not have the substantially identical and equal responsibilities of the orderly; but that the latter has greater responsibility augmented in the field of traction and male catheterizations and sterile practices.

D. DIFFERENT WORKING CONDITIONS—The orderly by virtue of working all over the hospital, and the demanding working conditions in the emergency room, performed his duties in a different environment—a more taxing and demanding work encompassing the unpleasant contact with the very ill, severely injured and dying, the unruly and violent, the drunk and drug addict— all this points up the hard, heavy, unpleasant, tedious and dangerous work of the orderly—which rarely at any time confronted the aide. The constant strain and tension of hospital wide responsibility to emergency calls was a factor in the more onerous and hazardous working

conditions to which orderlies were subjected. This has been true since February 1, 1967.

3. Here the Department of Labor does not contend that the job description and requirements fail to set out distinctive jobs of orderlies and aides or that such differences in these hospital jobs have been universally recognized throughout the hospital field. In this suit the Department must prove that the aides involved did substantially identical work with the orderly employed during her work period. The Department has not met this burden by showing aides doing substantially identical work to orderlies Draper, Murphy, Ackerman, Hill, Handy, Amerson and Bell or any other orderly.

4. As to responsibility for the whole Hospital, emergency calls, security, catheterizations, setting up orthopedic equipment, different working conditions, emergency room work of the orderly, these are clearly more than an incidental or occasional matter but the gravamen and crux of the real and primary work of the orderly; nor is it the type of work that is readily separable because it is performed at identifiable times and places so that it would be possible to break up a work week into separate portions having different rates of pay. Thus the case of Wirtz v. Rainbo Baking Co., 54 L.C. par. 31, 884; Wirtz v. Basic, Inc., D.C., 256 F.Supp. 786; Wirtz v. Meade Mfg., 55 L.C. par. 31, 936; Shultz v. Brookhaven Hospital, D.C., 305 F.Supp. 424; Murphy v. Miller Brewing Co., 61 CCH Labor cases par. 32,274; Shultz v. American Can Company-Dixie Products, 424 F.2d 356, Eighth Cir. Ct. of App.; Kollar Craft Plastics, 58 L.C. par. 37.076 are not in point. These cases are distinguished for this reason in the cases of Shultz v. Kentucky Baptist, Civ. No. 5955, 62 L.C. par. 32,296; Wirtz v. Dennison Mfg. Co., D.C., 265 F.Supp. 787, 790; Hodgson v. Golden Isle Nursing Home, Inc., 64 LC par. 32,445 (1–19–71).

The Court concludes that the job of an orderly since February 1, 1967 has been substantially different from the job of a nurses aide and that the pay differential between the orderlies and aides at Good Shepherd Hospital was based on factors other than sex. The jobs of aides and orderlies are not interchangeable.

The Court further concludes that Plaintiff has failed to establish that the jobs at issue during the period in question required equal skill, effort and responsibilty under similar working conditions. The responsibility of the orderly to emergency throughout all floors of the Hospital during all of the time of his working period and furnishing security to patients and personnel in the emergency room and the psychiatric unit in themselves are added responsibilities that justify the difference in compensation. The presence of the orderly provided a psychological effect because they were strong, capable and efficient and gave a sense of security that an aide could not give. The economic value of the extra duties of the orderlies is commensurate with the pay differential paid to the orderlies. The evidence clearly establishes that a substantial difference exists in the full job cycles between the position of aide and orderly thereby justifying the difference in wages. Work of the orderly calls for greater skill, responsibility and effort and their work is performed under more onerous and hazardous working conditions.

5. The Good Shepherd Hospital has not violated Section 6(d) and Section 15 (a) (2) of the Fair Labor Standards Act of 1939 as amended. The Motion of the Good Shepherd Hospital for Judgment at the completion of all evidence is sustained.

6. That a Judgment of Dismissal be entered that the action be dismissed with prejudice at Plaintiff's costs. Defendant shall submit an appropriate order in accordance with these findings.