Peter J. BRENNAN, Secretary of Labor, United States Department of Labor, Appellant,

v.

PRINCE WILLIAM HOSPITAL CORPORATION, Appellee.

No. 73-2331.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1974.

Decided Sept. 24, 1974.

---

Carin Ann Clauss, Associate Sol., U.S. Dept. of Labor (William J. Kilberg, Sol. of Labor, Sylvia S. Ellison and Helen W. Judd, Attys., U. S. Dept. of Labor, and Marvin Tincher, Regional Atty., on brief), for appellant.

John K. Pickens, Alexandria, Va., for appellee.

Before BOREMAN, Senior Circuit Judge, and CRAVEN and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

The Secretary of Labor appeals from the dismissal of an action against Prince

William Hospital to equalize pay of male hospital orderlies and female nurses' aides in conformity with the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1).[1] The district court noted that the facts were not in dispute and that the controversy centered on the inferences to be drawn from them. It found that although aides and orderlies do the same type of patient care work, the following differences exist between the jobs: the proportions of routine care tasks are not the same; aides do work which orderlies are neither required nor permitted to do; and, most important, orderlies do work, including extra tasks, which aides are neither required nor permitted to do. It concluded, therefore, that the Secretary had failed to establish that the aides and orderlies perform substantially equal work.

We believe that the district court gave undue significance to these differences because it misapprehended the statutory definition of equal work, which embraces the concepts of "skill, effort, and responsibility."[2] Since it applied an improper legal standard to the relevant facts, we reverse and remand for the entry of judgment for the Secretary. *See* Piedmont Minerals Co. v. United States, 429 F.2d 560, 562 n. 4 (4th Cir. 1970); Schultz v. Wheaton Glass Co., 421 F.2d 259, 267 (3rd Cir. 1969); 9 Wright & Miller, Federal Practice and Procedure § 2589 (1971).

I

In applying the Congressional mandate of equal pay for equal work on jobs which require equal skill, effort, and responsibility, there are two ex-

tremes of interpretation that must be avoided. Congress realized that the majority of job differentiations are made for genuine economic reasons unrelated to sex. It did not authorize the Secretary or the courts to engage in wholesale reevaluation of any employer's pay structure in order to enforce their own conceptions of economic worth. *See* Hodgson v. Miller Brewing Co., 457 F.2d 221, 227 (7th Cir. 1972). But if courts defer to overly nice distinctions in job content, employers may evade the Act at will. Hodgson v. Behrens Drug Co., 475 F.2d 1041, 1049 (5th Cir. 1973); Hodgson v. Miller Brewing Co., 457 F.2d 221, 227 (7th Cir. 1972); Hodgson v. Fairmont Supply Co., 454 F.2d 490, 493 (4th Cir. 1972); Shultz v. American Can Co.— Dixie Products, 424 F.2d 356, 360 (8th Cir. 1970); Shultz v. Wheaton Glass Co., 421 F.2d 259, 265 (3d Cir. 1969). The response to this dilemma has been to require the Secretary to prove substantial equality of skill, effort, and responsibility as the jobs are actually performed. *See* Hodgson v. Fairmont Supply Co., *supra;* Shultz v. Wheaton Glass Co., *supra.*

One of the most common grounds for justifying different wages is the assertion that male employees perform extra tasks. These may support a wage differential if they create significant variations in skill, effort, and responsibility between otherwise equal jobs, *see, e. g.,* Hodgson v. Golden Isles Convalescent Homes, Inc., 468 F.2d 1256 (5th Cir. 1972). But the semblance of the valid job classification system may not be allowed to mask the existence of

---

1. 29 U.S.C. § 206(d) provides:
   "No employer having employees subject to any provisions of this section shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. . . ."

2. 29 U.S.C. § 206(d)(1). Congress patterned the Equal Pay Act on the principles of job classification by which many employers set wage rates. Under these principles each job is rated in terms of the skill, effort, and responsibility required to do it, and the working conditions of the place where it is performed. *See* Corning Glass Works v. Brennan, 417 U.S. 188, 94 S.Ct. 2223, 41 L. Ed.2d 1 (1974).

wage discrimination based on sex. The Secretary may therefore show that the greater pay received by the male employees is not related to any extra tasks and thus is not justified by them. Higher pay is not related to extra duties when one or more of the following circumstances exists:

¶ Some male employees receive higher pay without doing the extra work. *E. g.*, Shultz v. American Can Co.— Dixie Products, 424 F.2d 356 (8th Cir. 1970) ; Shultz v. Wheaton Glass Co., 421 F.2d 259 (3d Cir. 1970).

¶ Female employees also perform extra duties of equal skill, effort, and responsibility. *E. g.*, Hodgson v. Fairmont Supply Co., 454 F.2d 490 (4th Cir. 1971).

¶ Qualified female employees are not given the opportunity to do the extra work. *E. g.*, Shultz v. Wheaton Glass Co., 421 F.2d 259 (3d Cir. 1969).

¶ The supposed extra duties do not in fact exist. *E. g.*, Hodgson v. Security National Bank, 460 F.2d 57 (8th Cir. 1972).

¶ The extra task consumes a minimal amount of time and is of peripheral importance. *E. g.*, Hodgson v. Behrens Drug Co., 475 F.2d 1041 (5th Cir. 1973) ; Hodgson v. Fairmont Supply Co., 454 F.2d 490 (4th Cir. 1972) ; Shultz v. American Can Co.—Dixie Products, 424 F.2d 356 (8th Cir. 1970).

¶ Third persons who do the extra task as their primary job are paid less than the male employees in question. *E. g.*, Shultz v. Wheaton Glass Co., 421 F.2d 259 (3d Cir. 1969).

In all of these cases the basic jobs were substantially equal. Despite claims to the contrary, the extra tasks were found to be makeweights. This left sex— which in this context refers to the availability of women at lower wages than men—as the one discernible reason for the wage differential. That, however, is precisely the criterion for setting wages that the Act prohibits. *See* Brennan v. City Stores, Inc., 479 F.2d 235, 241 n. 12 (5th Cir. 1973) ; Hodgson v. Brookhaven Hospital, 436 F.2d 719, 726 (5th Cir. 1970).

## II

■ Although a number of courts have applied the Equal Pay Act to hospital and nursing home aides and orderlies, varied employment practices among institutions have prevented the development of an industry-wide standard. The Act must be applied on a case by case basis to factual situations that are, for practical purposes, unique. *See* Hodgson v. Golden Isles Convalescent Homes, Inc., 468 F.2d 1256, 1258 (5th Cir. 1972). It is therefore necessary to examine in some detail the employment practices of Prince William Hospital, even though the material facts are not in dispute.

Prince William is a 154 bed general hospital in Manassas, Virginia. It contains four medical and surgical units, intensive care and cardiac facilities, an obstetric floor with a nursery, four operating rooms, and an emergency room. Average occupancy is 120 patients, 60% female.

Floor orderlies and nurses' aides provide routine patient care under the supervision of nurses. The hospital hires only men as orderlies and only women as aides. Their numbers varied during the time covered by this case, ranging between 30–40 aides and 5–10 orderlies.[3] When the case was tried, there were four full-time floor orderlies and thirty-four full-time aides, plus three part-time orderlies and three part-time aides. Full-time employees work five eight-hour shifts per week.

The hospital has maintained a pay differential between the two jobs since

---

3. This figure includes two orderlies permanently assigned to the operating rooms and one assigned to the emergency room. Since they are not involved in routine patient care, the case does not concern them.

1969.[4] It uses a pay system with thirteen pay grades and five steps within each grade. Grades are assigned to positions and steps within grade show merit or longevity. All nurses' aides are in grade I, in which the hourly pay ranges from $1.98 to $2.31, and all orderlies are in grade II, in which the hourly pay ranges from $2.08 to $2.43, depending on the step in which the employee has been placed.

Before 1969 aides and orderlies had been paid the same wages, but the hospital had difficulty in hiring orderlies. The hospital's administrator believed that a higher wage was needed to attract orderlies because of the limited number of men willing to do housekeeping and personal care work. When the orderlies' wage was raised, they were given the additional duty of catheterizing male patients.

Hiring criteria for aides and orderlies are identical: a tenth grade education, personal cleanliness, and a desire to work with people. Experience, though desirable, is unnecessary. Although the educational level of the aides was somewhat lower, both groups included individuals who had not finished high school. The pay differential follows neither experience nor education. An aide with prior hospital experience starts in grade I step 2 ($2.06), while a completely inexperienced orderly starts in Grade II step 1 ($2.08).

Aides and orderlies are the least skilled persons who care for patients. They participate in a common orientation program, but much of their training is acquired on the job. Each is assigned six to eight patients who require routine care. Whenever possible orderlies are assigned to male patients and aides to female, but the shortage of orderlies requires aides to care for males. Most of the time, aides and orderlies are occupied with tasks related to routine patient care that do not require the skills of a trained nurse.

The principal duties of both, which the hospital's director of nursing stated were identical, can be divided into four groups: patient care, which includes oral hygiene, back rubs, baths, bed-making, answering calls, giving bed pans, feeding, transporting the patient, and assistance with ambulation; minor treatment, which includes weighing, taking pulse, temperature, or blood pressure, draping and positioning the patient, administering heat pads and ice packs, assistance with dressing changes, and giving enemas; housekeeping, which includes room cleaning, equipment care and cleaning, work area cleaning, and obtaining supplies; and miscellaneous tasks, including answering the phone, running errands, and transportation to the morgue.

The hospital emphasized statistical evidence which shows that aides and orderlies do not perform all of their routine tasks with equal frequency. One of its exhibits, for example, shows that aides write charts, make beds, give baths, rub backs, and fetch bed pans more often than orderlies. Orderlies, on the other hand, bring supplies, run errands, and assist the nurses with their duties more often than aides. These distinctions, however, do not show any difference in skill, effort, or responsibility. All of the routine tasks are relatively simple. None performed more frequently by the orderlies requires the exertion of significantly more skill, effort, or responsibility than those performed more frequently by the aides. As hired, trained, and employed, the orderlies and aides are practical substitutes for one another in the performance of their basic duties. Disproportionate frequency in the performance of the same routine tasks does not make the job unequal. *See* 29 C.F.R. § 800.123 (1973).[5]

---

4. The parties have stipulated that the hospital is covered by § 206(d) and that $23,445.-23 in back wages are payable if it violated the Act.

5. While 29 U.S.C. § 206(d) does not give the Secretary of Labor authority to promulgate binding regulations, his interpretation of the statute is entitled to great deference when it

### III

The district court also found that aides perform certain duties which orderlies do not. Specifically, it found that some of the aides work in the obstetric department and care for infants in the nursery. Orderlies were not assigned to obstetrics, according to the director of nursing, for two reasons: there were no male patients and their lifting ability was, unneeded there. Aides assigned to obstetrics performed the same duties as those on the medical and surgical wards.

■ These facts do not show any differences in skill, effort, or responsibility. Unless there is a difference of working conditions involved, which is not contended here, there is no reason why the performance of the same duties in a different location should be a significant difference in the jobs. See 29 C.F.R. § 800.123 (1973); Hodgson v. Miller Brewing Co., 457 F.2d 221 (7th Cir. 1972).

### IV

The final—and in some respects the most difficult—aspect of this case pertains to extra duties throughout the hospital that are assigned to the orderlies but not to the aides. These duties are specified in the job description of the orderlies. The district court found that the following extra duties were the most significant: heavy lifting, assisting in the emergency room, performing surgical preps on male patients, providing physical security by dealing with combative or hysterical persons, and catheterization of male patients.

■ Job descriptions and titles, however, are not decisive. Actual job requirements and performance are controlling. See 29 C.F.R. § 800.121 (1973); Hodgson v. Brookhaven General Hospital, 436 F.2d 719, 724 (5th Cir. 1970). This aspect of the case, therefore, turns primarily on the extent to which the aides and orderlies actually perform the extra duties nominally assigned to the orderlies and on the skill, effort, and responsibility involved in those tasks which the orderlies alone perform.

In addition to caring for assigned patients, orderlies are required to answer calls to different parts of the hospital. On these excursions, called floating, they perform either their basic duties or the extra tasks. Floating itself adds nothing to the level of skill or responsibility, for that depends on the work done in the other locations. It might add to the degree of effort involved if the orderlies, in addition, had to perform their full basic workload. This, however, is not the case. According to the director of nursing, an orderly's routine duties at his assigned station are reassigned to other staff personnel, including the aides, when he is in another part of the hospital.[6]

The job description states that orderlies are expected to perform total lifting of heavy or helpless patients and to set up traction equipment. The district court, however, found that the same tasks are performed by aides when no orderly is available and that aides assist orderlies in these tasks. Due to the small number of orderlies, there are rarely more than two on duty each shift, and from time to time no orderly is available on some of the shifts. It sometimes takes more than one aide, or mechanical assistance, to replace an orderly, but there is no evidence that any heavy lifting cannot be done without

---

does not contradict the intent of Congress. Griggs v. Duke Power Co., 401 U.S. 424, 434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1970).

6. In contrast, Hodgson v. Good Shepherd Hospital, 327 F.Supp. 143, 146 (E.D.Tex. 1971), on which the hospital relies, involved

orderlies without assigned patients. The court characterized their work as "continuous, demanding, and tiring, . . . so rush[ed] as to prevent rest or scheduled coffee breaks or lunch periods," which was not true of the aides' job.

male assistance.[7] The performance of tasks involving physical strength, therefore, though necessary to the operation of the hospital, is not a peculiar aspect of the orderlies' job. Strength is not a factor in the hiring of orderlies, except in the very general sense that the hospital assumes that a man is usually stronger than a woman. A large, burly woman would not be hired as an orderly, nor would a small, delicate man be hired as an aide. But the converse is not true. One of the orderlies is 5'2" tall and weighs 125 lbs., while one aide is 6'1" and weights 225 lbs. The wage differential therefore can not be justified on the grounds that the hospital is maintaining a reserve of strong men for essential tasks.

Heavy lifting does not add significantly to the effort involved in the orderlies' job. In the ten working days covered by the hospital's survey of activities, the orderlies set up traction only once and lifted or assisted patients of unknown weight 54 times. Aides set up traction and lifted or ambulated patients a proportionate number of times. The extra effort, if any, is not substantial.

██ The emergency room is staffed by an orderly whose status is not questioned in this action. The hospital's claim that floor orderlies "assisted" there is supported only by the job description, but a mere job description without evidence of actual performance does not establish the existence of extra duties. Hodgson v. Brookhaven General Hospital, 436 F.2d 719, 724 (5th Cir. 1970). Aides were also called to work in the emergency room. The record proves no more than that both aides and orderlies performed their normal duties with minor variations in a different location.

All surgical preps during the day shifts are done by the operating room staff. On the evening and night shifts, surgical preps on men are done by orderlies, and on women by aides or nurses. Aides also do surgical preps in the obstetric ward. A person performing a prep explains to the patient what is about to be done, shaves the area where the incision will be made, and washes it with antiseptic soap. The skill, effort, and responsibility involved are identical regardless of the patient's sex.

Physical security, as an extra duty, has two components. Because of his size and sex, the presence of a male orderly is claimed to reassure the other staff and exert a calming and deterrent effect on potentially violent patients or intruders. Because of his superior strength, he is given the primary responsibility for restraining actually violent persons. According to the hospital, he therefore possesses a special skill and is required to exert extra effort.

The hospital's contention, however, is contradicted by the record. Although in theory the orderly deals with disturbances, in practice the nearest staff member is expected to do so until assistance comes. Aides are expected to restrain violent or disoriented patients themselves when possible. They also deal with intruders. The hospital's tabulation of orderly and aide activity shows aides spending a larger proportion of their time than orderlies in applying restraining devices to patients. There is no evidence that orderlies do more actual physical restraint than aides.

No doubt the physical presence of a man in the house does have a comforting effect on the staff. It is doubtful, though, that this is a significant component of the orderly job. Unlike hospitals in which providing physical security

---

7. The reverse was true in Hodgson v. Golden Isles Convalescent Homes, Inc., 468 F.2d 1256 (5th Cir. 1972); Hodgson v. Good Shepherd Hospital, 327 F.Supp. 143 (E.D. Tex.1971); and Hodgson v. William and Mary Nursing Hotel, 20 W.H.Cases 10 (M.D.Fla.1972), in all of which orderlies were required to transport and set up heavy, bulky oxygen equipment which was unsafe or impossible for the aides to move. In addition, the aides in *William and Mary* were forbidden to move patients by themselves. 20 W.H.Cases at 23.

has been found significant,[8] Prince William Hospital does not handle psychiatric, alcoholic, criminal, or other potentially dangerous patients. There is no evidence that episodes caused by violent or confused patients are so frequent or dangerous that orderlies are necessary for the safety of the staff. Security guards are called to deal with violent episodes even when orderlies are available. Moreover, the ability to deal with confused or violent patients, according to the director of nursing, is as much a function of attitude and experience as of size and strength. If the orderly's superior strength is an extra skill, it is a peripheral part of his employment.

The hospital places great emphasis on the fact that orderlies insert Foley catheters in male patients. It contends that the task is a highly skilled and responsible procedure, requiring 30 to 45 minutes of an orderly's time.

A Foley catheter is a sterile tube which is inserted in the patient's urethra to drain the bladder. Orderlies catheterize male patents with unobstructed urinary tracts. If any difficulty is foreseen or experienced a physician catheterizes the patient. Nurses catheterize female patients. They are competent to catheterize males, but prefer not to do so for reasons of modesty. Since the hospital has enough nurses to catheterize women, aides are not assigned this duty. The orderly's job therefore does call for the exercise of skill and responsibility which is not required of the aides.

However, no more than one or two routine catheterizations are usually performed each week. When no floor orderly is present, other qualified male personnel are available to do them. The hospital looks for no special skill in this regard from its prospective orderlies but concedes that "any reasonably dextrous person can learn male catheterization on the job." Orderlies were assigned this duty only when the hospital decided that a higher wage rate was needed to attract men for routine care work, and new orderlies who have not yet learned to catheterize are nevertheless paid at the higher rate.

■ Like any other extra duty, catheterization must be evaluated as part of the entire job. In Hodgson v. Fairmont Supply Co., 454 F.2d 490, 496 (4th Cir. 1972), we pointed out that when jobs were substantially equal, a minimal amount of extra skill, effort, or responsibility cannot justify wage differentials. Infrequent performance of catheterizations, unaccompanied by other extra skills and responsibilities, has never been held to support a pay differential between aides and orderlies. The orderlies in Hodgson v. William and Mary Nursing Hotel, 20 W.H. Cases 10 (M.D.Fla.1971), for example, a case in which the district court found catheterization to be a significant extra duty, also moved heavy equipment, administered suction therapy, and did other demanding work not done by aides. Catheterizations, moreover, were frequent and difficult in that geriatric nursing home. Similarly, catheterization was only one element of the orderlies' duties, which differed fundamentally from the aides', in Hodgson v. Good Shepherd Hospital, 327 F.Supp. 143 (E.D.Tex.1971). In contrast, catheterization which only consumed a minimal amount of time was considered to be an insubstantial difference in Shultz v. Brookhaven General Hospital, 305 F.Supp. 424 (E.D.Tex. 1969), aff'd in part and remanded in part sub nom. Hodgson v. Brookhaven General Hospital, 436 F.2d 719 (5th Cir. 1970), on remand 20 W.H. Cases 54 (E.D.Tex.1971), aff'd, 470 F.2d 729 (5th Cir. 1972). We conclude, therefore, that the orderlies' pay differential cannot be

8. *E. g.*, Hodgson v. Owensboro-Daviess County Hospital, 21 W.H.Cases 250 (W.D.Ky. 1972) (primary care of violent patients, alcoholics, and addicts) ; Hodgson v. Good Shepherd Hospital, 327 F.Supp. 143 (E.D. Tex.1971) (violent alcoholics, addicts, and psychiatric patients in lockup cells) ; Hodgson v. William and Mary Nursing Hotel, 20 W.H.Cases 10 (M.D.Fla.1971) (geriatric facility with many senile patients).

justified on the basis of the occasional extra work involved in catheterizing male patients.

In sum, the work performed by aides and orderlies is not identical. But, as we have previously held, application of the Equal Pay Act is not restricted to identical work. Hodgson v. Fairmont Supply Co., 454 F.2d 490, 493. The basic routine tasks of the aides and orderlies are equal. The variations that the district court found, when tested by the Act's standard of "equal skill, effort, and responsibility," do not affect the substantial equality of their overall work.

The judgment of the district court is reversed, and this case is remanded for entry of judgment for the Secretary.