Jacquelyn KATZ, Plaintiff,

v.

SCHOOL DISTRICT OF CLAYTON,
Defendant.

No. 75–658C(4).

United States District Court,
E. D. Missouri, E. D.

April 21, 1976.

Francis H. Kennedy, Jr., St. Louis, Mo., for plaintiff.

George J. Bude, Clayton, Mo., for defendant.

## MEMORANDUM

NANGLE, District Judge.

Plaintiff Jacquelyn Katz brought this suit pursuant to 29 U.S.C. § 206(d) seeking monetary and declaratory relief.

This case was tried before the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

## FINDINGS OF FACT

1. Plaintiff Jacquelyn Katz is a female citizen of the United States, residing in St. Louis County, Missouri. Defendant School District of Clayton ("District") is a public school district operating a public school system in St. Louis County, Missouri. Defendant is an employer within the meaning of that term as it is used in the Equal Pay Act, 29 U.S.C. § 203(d).

2. Plaintiff was employed by defendant District during the school years 1972–1973, 1973–1974, and 1974–1975. Plaintiff worked at the Clayton Alternative School. This school, established in 1972, offers an alternative method of education to the traditional high school. The students attending the Alternative School are volunteers, attending with the permission of their parents. Approximately forty students attended the Alternative School during each of the school years in question. The Alternative School is located in its own building, approximately one mile away from the regular high school campus.

3. The District has approximately 2100 students and 165 teachers.

4. Plaintiff received a Bachelor of Arts degree from Webster College in Missouri in December, 1972. She had combined major in Alternative Education, Elementary Education and Liberal Arts. On July 1, 1972 plaintiff received a life certificate to teach elementary grades in the Missouri public schools from the Missouri State Board of Education. On July 1, 1973, she received a life certificate to teach French to grades K–12.

5. During the 1972–1973 school year, plaintiff was hired to be a secretary at the Alternative School.

6. Plaintiff spoke to Dr. Earl W. Hobbs, Superintendent of Schools for the District, at the end of the 1972–1973 school year and told him that she was interested in getting a contract as a teacher assistant. Plaintiff did get this job, with the understanding that she would continue her secretarial duties. At the time that plaintiff received this contract, Dr. Hobbs did not explain the duties of a teaching assistant to her. The role was clear to plaintiff, however, as plaintiff had been an instructional aide in another school district prior to this time.

7. During the 1973–1974 and 1974–1975 school years, plaintiff, Martin Sussman and Alfred Donovan were the Alternative School's full time staff. Other employees of the District worked part-time at the Alternative School, and worked at the regular high school during the remainder of their time.

8. During the 1973–1974 and 1974–1975 school years, both Sussman and Donovan had contracts as teachers. Plaintiff's contract was that of a teacher assistant. As a teacher assistant, plaintiff earned approximately $4,255 for the 1973–1974 school year and approximately $4,922 for the 1974–1975 school year. Had plaintiff received a teacher's contract, her salary would have been approximately $7,700 for the 1973–1974 school year and $8,732 for the 1974–1975 school year.

9. During the staff meetings in preparation for the 1973–1974 school year, the staff (which included all persons working at the Alternative School) discussed the plans for the coming school year. It was decided as a group that plaintiff could assume some student counseling duties and teach some classes. This decision was reached after plaintiff indicated a desire to teach and to counsel.

10. The Alternative School was operated by the staff such that all persons involved, at times including students, voted on decisions. Plaintiff was included in these decision-making meetings.

11. As a teacher assistant, plaintiff was not required by Dr. Hobbs, George Beltz who was the principal of the Clayton High School, or by Sussman to teach or to counsel. Instead, plaintiff saw it as an opportunity to show the District what she could do, with the hopes of getting an appointment as a full teacher. Once plaintiff assumed these duties, she felt that she could not stop as she viewed it as a commitment and felt that the staff would have been upset. There is no evidence, however, that she was instructed to continue her assumed duties nor evidence that she requested to be relieved of the duties.

12. During the course of the 1973–1974 school year, plaintiff counseled between 8 and 12 students. Additionally, plaintiff led a reading group, co-taught with Donovan

an alternative education course, taught a women's study and discussion group, and a course concerned with the behavior of fish in an overcrowded environment, and supervised independent projects (English grammar, crocheting, reading, and history of prisons in America). During this school year, plaintiff spend almost twice as much time involved in administrative work, consisting of secretarial duties, public relations, school evaluations and meetings.

13. During the 1974–1975 school year, plaintiff counseled approximately 12 students. Plaintiff also led a women's study and discussion group, a men's and women's study and discussion group, co-taught a personal growth group with Sussman, co-taught a course on human sexuality with an instructor from the Clayton High School, and supervised independent projects (nutrition, history of the Beatles, history of women in and through literature, comparison of the cost of living in a Florida city and St. Louis, and sewing). Her administrative duties comprised less of her working time during this school year, secretarial duties having been eliminated. Plaintiff attended staff meetings, supervised volunteer instructors, served on the curriculum committee and academic committee, and was involved in various other administrative tasks.

14. In the fall of 1974, plaintiff received a career grant which is normally intended to provide financial support to teachers who were interested in gaining additional skills. It is clear, however, that plaintiff's request for the grant was a special one, as she was not a teacher, and that plaintiff understood this to be so.

15. Dr. Hobbs was aware that plaintiff was counseling students. It was his opinion that in the environment of the Alternative School, this could not be avoided. He felt that every adult in the School should do some counseling. Dr. Hobbs was also aware that plaintiff was teaching some courses but he felt that they were "minicourses". He was not aware that plaintiff had the ultimate responsibility for any of the courses in which she was involved.

16. There were no formal job descriptions for teachers and teacher assistants at the time in question. Dr. Hobbs stated, however, that a teaching assistant was required to assist in teaching, to undertake general clerical duties, to work with the students, and to supervise lunch and after-school activities. By contrast, a teacher is required to plan and execute lesson plans, confer with parents, execute the curriculum, maintain professional relationship with other teachers, select the materials to be used and maintain district and state standards. These differences are substantial and justify a pay differential.

17. The Staff Handbook sets forth the training and experience requirements. To be a teacher, the applicant must have a bachelor's degree although a master's degree is usually required for teaching the upper grades. The applicant must have a Missouri Teaching Certificate and two years of teaching experience is usually required. A teacher assistant need only possess a college degree.

18. Plaintiff was never told by either the full-time teachers at the Alternative School or by the administrative personnel of the District that she was required to take on the teaching and counseling duties. Instead, plaintiff volunteered to do these jobs and this was accepted by the staff of the Alternative School. No member of the staff at the Alternative School has the authority to offer employment to, or to promote, persons.

19. On April 4, 1975, plaintiff was notified by the President and Secretary of the Board of Education that they were unable to offer her a contract for the 1975–1976 school year.

## CONCLUSIONS OF LAW

This Court has jurisdiction over the subject matter and of the parties to this suit in accordance with 29 U.S.C. § 216 and 28 U.S.C. § 1343(3).

The Equal Pay Act provides, in part, that:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which *requires* equal skill, effort, and responsibility, and which are performed under similar working conditions . . .
29 U.S.C. § 206(d) [emphasis added].

■ It is clear that an employer may not evade his statutory duties by making technical distinctions between jobs so as to justify a pay differential. The term "equal" does not, in this context, mean identical but instead "substantially equal". See *Brennan v. Prince William Hospital Corporation,* 503 F.2d 282 (4th Cir. 1972), *cert. denied,* 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975); *Shultz v. Wheaton Glass Company,* 421 F.2d 259 (3rd Cir. 1970); *Hodgson v. Daisy Manufacturing Company,* 317 F.Supp. 538 (W.D.Ark.1970), *modified,* 445 F.2d 823 (8th Cir. 1971).

■ While there may be some overlap in the duties of a teacher and a teacher assistant, such as working with the students, it is clear that a teacher has ultimate responsibility over the students and their course of studies. The role of teacher assistant, as the name implies, is to assist the teacher when and as needed by the teacher. The Court concludes that the difference in pay between a teacher and teacher assistant is justified by the difference in skill, effort, and responsibility required by each job. See *Hodgson v. Fairmont Supply Co.,* 454 F.2d 490 (4th Cir. 1972).

■ Before a violation of the Equal Pay Act may be found, plaintiff must establish that "the performance of such jobs *requires* equal skill, effort, and responsibility and are performed under similar working conditions . . .". *Hodgson v. Daisy Manufacturing Company, supra,* at 541 [emphasis added]. It is clear that plaintiff has failed to prove her prima facie case. The Court has found that the job of teacher and teacher assistant differ in the amount of skill, responsibility and effort required. There is absolutely no evidence, other than plaintiff's feelings of obligation, that the unsupervised teaching and counseling duties which she performed were required of her by her job as teacher assistant. While lack of supervision by District personnel may have contributed to this situation, this is not the same as saying that the duties which plaintiff assumed were required. The evidence shows that plaintiff volunteered to perform these duties, in part to attain a teacher's contract, and that this offer was accepted by the staff at the Alternative School. The staff, however, had no authority to hire or to promote persons and accordingly, their acquiescence in plaintiff's assumption of duties can not be construed to indicate that such duties were required of plaintiff. In essence, plaintiff's actions amounted to an attempt to promote herself by the voluntary assumption of duties not required by her job, nor required by her employers or supervisors. This Court will not require an employer to compensate an employee for work voluntarily done nor find a violation of the Equal Pay Act for duties voluntarily assumed above and beyond the requirements of the job. *Cf., Tenaglia v. Tully & Di Napoli, Inc.,* 43 F.Supp. 814 (E.D.N.Y.1942) (denying compensation for overtime voluntarily worked).

Plaintiff having failed to establish her prima facie case, judgment will be for defendant.