Peter J. BRENNAN, Secretary of Labor,
United States Department of Labor,
Plaintiff-Appellee,

v.

SOUTH DAVIS COMMUNITY
HOSPITAL, a corporation,
Defendant-Appellant.

No. 75–1181.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted April 14, 1976.

Decided July 27, 1976.

George K. Fadel, Bountiful, Utah, for defendant-appellant.

Carin Ann Clauss, Associate Sol., Washington, D. C. (William J. Kilberg, Sol. of Labor; Donald S. Shire and Ann Galvani, U. S. Dept. of Labor, Washington, D. C., on the brief), for plaintiff-appellee.

Before HILL, SETH and DOYLE, Circuit Judges.

HILL, Circuit Judge.

The Secretary of Labor instituted this action against appellant, South Davis Community Hospital, for various alleged violations of the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*). The Secretary claimed, *inter alia*, that appellant compensated female aides less than male orderlies and female maids less than male janitors for work which was equivalent within the meaning of 29 U.S.C. § 206(d)(1).[1] Another

---

1. Title 29 U.S.C. § 206(d)(1) provides in pertinent part:

No employer having employees subject to any provisions of this section shall discrimi-

nate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the

claim was appellant had violated 29 U.S.C. § 207 [2] when appellant had not paid an X-ray technologist and a medical technologist the statutorily prescribed rate for time worked in excess of forty hours a week.

Following a trial to the court, the district judge determined appellant had violated the Equal Pay Act [§ 206(d)(1)] with respect to wages paid orderlies and aides and maids and janitors. The court also held the medical technologist was within the "professional capacity" exception of § 213 [3] and appellant was not required to pay § 207 wages to him for his overtime. The court determined the X-ray technician was not within the "professional capacity" exception and appellant had violated § 207 in not paying the overtime rate to him. A judgment for back wages in the amount of $60,214.74 was awarded the Secretary for ultimate distribution to the affected employees.

## ORDERLIES AND AIDES

Appellant argues the work of orderlies and aides is not equal within the meaning of § 206(d)(1) and the Secretary did not sustain his burden of proving that equality. *Hodgson v. Golden Isles Convalescent Homes, Inc.*, 468 F.2d 1256 (5th Cir. 1972). To be within § 206(d)(1), the wages must be paid ". . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." To sustain a § 207(d)(1) charge, courts only ". . . require the Secretary to prove *substantial* equality of skill, effort, and responsibility as the jobs actually performed," [emphasis added] and do not allow

employers to escape the Act's reach by drawing overly fine distinctions in the tasks at issue. *Brennan v. Prince William Hospital Corp.*, 503 F.2d 282 (4th Cir. 1974), *cert. den'd*, 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 65 (1975).

This is not the first Equal Pay Act case involving orderlies and aides. *See, e. g., Brennan v. Owensboro-Daviess County Hospital*, 523 F.2d 1013 (6th Cir. 1975); *Brennan v. Prince William Hospital Corp., supra; Hodgson v. Brookhaven General Hospital*, 470 F.2d 729 (5th Cir. 1972); *Hodgson v. Golden Isles Convalescent Homes, Inc., supra; Hodgson v. Brookhaven General Hospital*, 436 F.2d 719 (5th Cir. 1970); *Hodgson v. Maison Miramon, Inc.*, 344 F.Supp. 843 (E.D.La.1972); *Hodgson v. Good Shepherd Hospital*, 327 F.Supp. 143 (E.D.Tex.1971). However, a reading of these cases indicates that industry-wide standards have not evolved in this particular area because of the manifold differences in employment practices. *Brennan v. Prince William Hospital Corp., supra.* Case-by-case determinations are required.

In making its inequality argument, appellant uses the "extra tasks" approach, arguing the orderlies were required to perform additional tasks requiring skill, effort and responsibility which the aides did not perform. The tasks relied upon are (1) weighing bedridden patients by use of bed scales, (2) catheterizing male patients, (3) assisting in the emergency room and intensive care unit, (4) setting up traction devices, (5) cardio-pulmonary resuscitation, and (6) using the autoclave and transporting heavy items including oxygen tanks.

rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . .

2. Title 29 U.S.C. § 207(a)(1) provides in pertinent part:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek . . . is employed in an enterprise engaged in commerce . . . .

for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

3. Title 29 U.S.C. § 213(a) provides in pertinent part:

The provisions of . . . . section 207 of this title shall not apply with respect to—
(1) any employee employed in a bona fide executive, administrative, or professional capacity . . . .

■ In evaluating the effect of these extra tasks on the job equality determination, we apply several established principles.

Higher pay is not related to extra duties when . . .

. . . . .

Female employees also perform extra duties of equal skill, effort, and responsibility. [Citation omitted.]

. . . . .

The supposed extra duties do not in fact exist. [Citation omitted.]

The extra task consumes a minimal amount of time and is of peripheral importance. [Citations omitted.]

*Brennan v. Prince William Hospital Corp., supra.*

[J]obs do not entail equal effort, even though they entail most of the same routine duties, if the more highly paid job involves additional tasks which (1) require extra effort, (2) consume a significant amount of the time of all those whose pay differentials are to be justified in terms of them, and (3) are of an economic value commensurate with the pay differential.

*Hodgson v. Brookhaven General Hospital,* 436 F.2d 719 (5th Cir. 1970). Our task is to decide if the district court's determination that the aides and orderlies performed equal work within the meaning of § 206(d)(1) is supported by substantial evidence.

Much space in the briefs and much time in argument were spent on the catheterization function. Catheterization was determined by the trial court to be a task requiring some skill. The evidence indicated that orderlies performed catheterizations of male patients and physicians or registered nurses did the catheterization of female patients. Catheterizations by orderlies of male patients has been one function which courts have relied upon in allowing a pay differential between orderlies and aides. *Hodgson v. Golden Isles Convalescent Homes, Inc., supra, Hodgson v. Good Shepherd Hospital, supra.* The hospital administrator, in the instant case, testified an aver-

age of three to five catheterizations were performed each day; as the patient load was about 50% male and 50% female, two or three catheterizations were performed by orderlies daily. This procedure takes approximately 5 to 15 minutes per patient. Some time was spent in caring for the catheters already in place. In *Brennan v. Prince William Hospital Corp., supra,* the following guide was provided concerning catheterization as an "extra task":

Like any other extra duty, catheterization must be evaluated as part of the entire job. . . . [W]hen jobs [are] substantially equal, a minimal amount of extra skill, effort, or responsibility cannot justify wage differentials. Infrequent performance of catheterizations, unaccompanied by other extra skills and responsibilities, has never been held to support a pay differential between aides and orderlies.

Because of the small number of catheterizations performed and the little time expended, we agree with the trial court that ". . . the catheterizations are not a sufficiently significant part of the orderlies' work to be a determinative difference. . . ."

■ We have thoroughly reviewed the record and considered appellant's numerous contentions concerning the other "extra tasks." Several of these "extra tasks" had been done by aides although not on as regular a basis as the orderlies performed the tasks. Aides had assisted orderlies with many of the tasks on various occasions. Concerning the bedscales weighing, the trial court determined that "in both amount of work and amount of time, the additional lifting done by orderlies was minimal." The evidence supported that determination. Generally, the tasks called "extra duties" by appellant did not require greater skill, effort or responsibility in any significant amount or degree than the duties which aides were handling at the same time. Differences in the kind of effort expended but not significant in amount or degree will not support a wage differential. 29 C.F.R. § 127.

Although consideration of the alleged "extra duties" in the aggregate presents a closer question, we cannot say the trial court erred in determining the jobs were substantially equal. In the instant case, there was no real indication of more free time for aides than for orderlies. The trial court also determined

> The orderlies employed by defendant did not have any notable additional responsibilities. One case specially contrasted the responsibility of orderlies to cover three floors with the one-floor duties of maids. See Hodgson v. Good Shepherd Hospital, supra. Another case, which held for the hospital, gave prominence to the fact that the orderlies were assigned the same number of patients as the aides, plus given additional emergency room and other duties. See Hodgson v. Brookhaven General Hospital, supra. But there are no such similar extra responsibilities here to vindicate the defendant.

Our conclusion is that both aides and orderlies were primarily involved in basic patient care and that any differences in duties did not involve significantly greater amounts of skill, effort or responsibility. Thus, the trial court properly determined the Equal Pay Act had been violated.

## MAIDS AND JANITORS

Appellant employed nine maids (eight full-time and one relief) and three janitors (one full-time day, one relief day, and one night). The janitors received more pay per hour than did the maids. Appellant contends the janitors and maids were not doing equal work because the janitors were required to perform tasks requiring more effort. The janitorial duties which appellant relies on for its extra effort argument are (1) operating a 24″ Convertomatic floor stripping machine, (2) filling a pop machine with two to six cases daily, (3) carrying garbage cans to an outside receptacle, (4) using a ladder, and (5) removing snow.

Again we need not find precise identity of functions before an equal work determination is possible; only *substantial* equality of skill, responsibility and effort and similar working conditions must be shown to preclude a wage differential. In reaching its determination that the tasks performed by maids and janitors were substantially equal, the trial court noted, "there is evidence that the maids did empty the trash on occasion and had training in the operation of the Convertomatic. Both maids and janitors did general cleaning work, such as floor polishing and washing walls." Other considerations can be derived from the record. The pop machine task required only 15 to 20 minutes daily. The garbage emptying task of the janitor required 35–40 minutes twice a day. There was testimony the maids used the ladders, perhaps unnecessarily, in changing drapes in rooms. The maids also performed tasks which the janitors did not, for example, cleaning bathroom sinks and toilets, stripping beds, cleaning mattresses and making beds.

■ In assessing the effort differences pointed to by appellant, we find the Secretary's interpretations of that concept helpful and persuasive.[4]

> Effort is concerned with the measurement of the physical or mental exertion needed for the performance of a job. Where jobs are otherwise equal under the Act, and there is no substantial difference in the amount or degree of effort which must be expended in performing the jobs under comparison, the jobs may require extra effort in their performance even though the effort may be exerted in different ways on the two jobs. Differ-

---

4. "We consider that the rulings, interpretations and opinions of the Administrator under this Act [Fair Labor Standards], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

ences only in the kind of effort required to be expended in such a situation will not justify wage differentials.

29 C.F.R. § 800.127.

[T]he occasional or sporadic performance of an activity which may require extra physical or mental exertion is not alone sufficient to justify a finding of unequal effort.

29 C.F.R. § 800.128.

The extra effort which janitors may have exerted in running a larger floor cleaning machine than the maids ran, filling a pop machine once a day, shoveling some show and carrying large garbage cans is simply too insubstantial to make their jobs unequal. *See Brennan v. Board of Education,* 374 F.Supp. 817 (D.N.J.1974), *appeal dismissed,* 468 F.2d 1325 (3rd Cir. 1972). "Insubstantial or minor differences in the degree or amount of skill, or effort, or responsibility required for the performance of jobs will not render the equal pay standard inapplicable." 29 C.F.R. § 800.122. All the work was within the general cleaning function and the slight differences in kinds of effort would not prevent a finding of substantially equal efforts. Upon this record, we believe there was substantial evidence to support the trial court's determination that the jobs were substantially equal.

## X–RAY TECHNICIAN

Appellant had employed one Anthony Macklyn as chief X-ray technician since 1967; Macklyn described his job as follows:

[M]y primary duty is simply running the department on a day to day basis; that is, seeing that the work, the X-ray films that are taken, X-ray examinations, are of sufficient quality to satisfy the radiologist, to satisfy the medical staff of the hospital. So it's a supervisory job, seeing that the technicians under me do their job in a proper manner, seeing to the welfare of the patients, ordering supplies, hiring people, terminations.

Macklyn also testified he was required to examine the X-ray films to decide if they were technically adequate or if additional views were needed. Macklyn was paid for his overtime work but apparently not at the one and a half times normal wage rate of § 207. Appellant argues that Macklyn was within the "professional capacity" exemption of § 213 and thus appellant was not required to pay him overtime wages at the statutorily prescribed rate.

Section 213 provides that certain terms including "bona fide . . . professional capacity" will be "defined and delimited from time to time by regulations of the Secretary . . . ." This Court has indicated that the regulations defining and delimiting those terms ". . . fix absolute criteria determinative of the question of exemption." *Legg v. Rock Products Mfg. Corp.,* 309 F.2d 172 (10th Cir. 1962); *Walling v. Yeakley,* 140 F.2d 830 (10th Cir. 1944).

The appropriate regulation is 29 C.F.R. § 541.3 which reads in pertinent part:

The term "employee employed in a bona fide . . . professional capacity" in section 13(a)(1) of the act shall mean any employee:

(a) Whose primary duty consists of the performance of:

(1) Work requiring knowledge of an advance type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, or from training in the performance of routine mental, manual, or physical processes,

. . . and

(b) Whose work requires the consistent exercise of discretion and judgment in its performance; and

(c) Whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; and

(d) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not an essential part of and necessarily incident to the work described in paragraphs (a) through (c) of this section; and

(e) Who is compensated for his services on a salary or fee basis at a rate of not less than $140 per week.

This regulation defines the "professional capacity" exemption. Exemptions in the Fair Labor Standards Act are to be narrowly construed and an employer seeking an exemption ". . . has the burden of establishing the exemption affirmatively and clearly." *Legg v. Rock Products Mfg. Corp., supra.* The question of whether an employee comes within an exemption is primarily a question of fact and the trial court's finding can be set aside only if clearly erroneous. *Walling v. General Industries Co.,* 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947); *Brennan v. Southern Productions, Inc.,* 513 F.2d 740 (6th Cir. 1975).

 The trial court, in denying the applicability of the exemption, relied upon an interpretation of the Secretary which reiterated the § 541.3 requirement that to be working in a professional capacity the employee must be engaged in work predominantly intellectual and varied in character and not routine. "This test applies to the type of thinking which must be performed by the employee in question." 29 C.F.R. § 541.306. Specifically as to X-ray technicians the interpretation says:

(c) . . . X-ray technicians have only limited opportunity for the exercise of independent discretion and judgment, usually performing their duties under the supervision of a more highly qualified employee. The more complex duties of interpretation and judgment in this field are performed by obviously exempt professional employees.

We agree with the trial court. Macklyn's testimony does indicate he makes some decisions but they appear to be limited to determining if the pictures are technically adequate. Based upon this record, we cannot say the trial court was clearly erroneous

in determining Macklyn was not within the professional capacity exemption. His work does not appear to be work predominantly intellectual and varied as required by § 541.3. The absence of this element makes consideration of other matters unnecessary.

AFFIRMED.