W. J. USERY, Jr., Secretary of Labor,
Plaintiff-Appellant,

v.

COLUMBIA UNIVERSITY, and William J. McGill, Individually and as President of Columbia University, Defendants-Appellees.

No. 398, Docket 76-6071.

United States Court of Appeals,
Second Circuit.

Argued Jan. 5, 1977.

Decided Oct. 4, 1977.

---

Carin Ann Clauss, Associate Solicitor, Dept. of Labor, Washington, D. C. (William J. Kilberg, Solicitor of Labor, Melanie Franco Nussdorf, Atty., Dept. of Labor, Washington, D. C., and Francis V. LaRuffa, Regional Solicitor, Dept. of Labor, New York City, on the brief), for plaintiff-appellant.

Robert S. Stitt, New York City (Anthony Limitone, Jr., Raymond L. Vandenberg, and Thacher, Proffitt & Wood, New York City, on the brief), for defendants-appellees.

Before MOORE, OAKES and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

On this appeal from a judgment entered after a bench trial in the Southern District of New York, Richard Owen, *District Judge*, 407 F.Supp. 1370, the essential question presented is whether the work performed respectively by the heavy and light cleaners employed by Columbia University is "equal" within the meaning of the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1) (1970) [1] (the Act). We agree with the district court that the work is not equal. We affirm.[2]

## I.

The Equal Pay Act prohibits an employer from discriminating "between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." See note 1 *supra*.

Invoking the enforcement provisions of the Fair Labor Standards Act,[3] the Secretary of Labor commenced the instant action against Columbia University and its president (Columbia) on March 11, 1974. The action sought to enjoin Columbia from discriminating against its female light cleaners, allegedly on the basis of sex in violation

1. 29 U.S.C. § 206(d)(1) (1970) provides:

"No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

2. This is our second encounter with the Equal Pay Act. Our first is reflected in Chief Judge Friendly's helpful opinion in *Hodgson v. Corning Glass Works*, 474 F.2d 226 (2 Cir. 1973), aff'd sub nom. *Corning Glass Works v. Brennan*, 417 U.S. 188 (1974), which of course is the law of this Circuit.

3. 29 U.S.C. § 217 (1970).

of the Equal Pay Act, by paying them at a lower hourly rate than that paid to its male heavy cleaners. The action also sought an injunction against further violations and an award of back pay.

At a 15 day bench trial during September and November 1974, the parties, focusing upon the statute's "equal . . . effort" criterion, produced extensive evidence on the physical requirements of the heavy and light cleaning positions. The crux of Judge Owen's finding of fact on this critical issue is set forth in his opinion dated February 11, 1976 as follows:

> "[T]he jobs of heavy cleaner and light cleaner are different. Going beyond the job descriptions, from the extensive testimony adduced before me at the trial, it is clear that the job of heavy cleaner involves greater effort than that of light cleaner." 407 F.Supp. at 1374–75.

Accordingly, the judge held that the Secretary had failed to sustain the burden of proving that the heavy and light cleaners perform equal work within the meaning of the Act. From the judgment dismissing the action, the Secretary has taken the instant appeal.[4]

## II.

The facts are not in dispute. They appear clearly on the face of the record. To the extent necessary to an understanding of our rulings on the issues of law presented, we summarize the controlling facts, including the essential findings of the district court which we accept pursuant to Fed.R. Civ.P. 52(a).

For more than 30 years Columbia has divided the duties of its custodial force into "heavy" and "light" categories. At the time of trial it employed 160 heavy cleaners (designated "janitors" prior to 1972), 4 of whom were female, and 111 light cleaners (designated "maids" prior to 1972), all of whom were female. Since 1972 all heavy cleaning positions have been open to applicants of both sexes.[5] No male ever has applied for the position of light cleaner. The light cleaners always have been paid less than the heavy cleaners. The differential was 45 cents an hour at the time of trial.

Columbia assigns approximately 80% of the light cleaners to its academic buildings and the remainder to its residence halls. Each cleaner in the group assigned to the academic buildings has daily responsibility for between 1 and 5 floors, depending on the size of the building and the functions of the particular rooms included in the assignment. The functions are those one would expect at any university, including classrooms, offices, library stacks, and the like. The light cleaners dust mop or vacuum the floors of the rooms and some of the corridors; dust, polish, or dampcloth the furniture, fixtures, baseboards and windowsills; and remove small spots from the walls, floors and doors. They also empty wastebaskets and ashtrays into trashbags. These are deposited at the elevator on each floor where they are picked up by heavy cleaners. In performing their work the light cleaners use dust mops, carpet sweepers, household vacuum cleaners, toy brooms, rags, sponges and 14 quart buckets. Some of the light

---

4. Judge Owen also dismissed a companion action, *Walker v. Columbia*, 73 Civ. 2687, which had been consolidated for trial with the instant action. The *Walker* action had been brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 (1970), by individual women employees of Columbia who alleged discrimination in hiring, job placement, pay, promotions and training. The notice of appeal from the judgment dismissing the *Walker* action was withdrawn.

5. For heavy cleaning work Columbia has been paying more in cleaning wages to a limited number of women since 1949 when the classifi-

cation "shower maid" first appeared in its collective bargaining agreement. This classification encompassed the female cleaners assigned to the showers and lavatories in the women's residence hall at Columbia. The classification never included more than 8 employees. At the time of trial 2 of the 4 female heavy cleaners performed the "shower maid" function.

All other heavy cleaner positions were limited to men until 1972 when Columbia opened them to women. The remaining 2 women employed as heavy cleaners at the time of the trial worked within this board, formerly male, classification.

cleaners transport this equipment in wheeled carts which weigh 60 pounds unloaded. The equipment itself, including a vacuum cleaner, creates a 21 pound load, to which a full trash bag adds an indeterminate amount of weight up to 30 pounds.

The light cleaners assigned to the residence halls perform the same functions as those performed in the academic buildings. Each day they clean the common rooms and offices on the ground floors, and the corridors and lounges on the residential floors. Students' rooms are cleaned on a special assignment basis when unoccupied during the summer.

The heavy cleaners may be grouped roughly into four categories: (1) those assigned to public corridors, lobbies, stairways and elevators; (2) those assigned to public lavatories; (3) those permanently assigned to special projects; and (4) those assigned to certain off-campus buildings.

The primary daily responsibility of group (1) is to wet mop the corridors, lobbies, stairways, elevators, classrooms and laboratories of the academic buildings. They also collect the bags of trash left on each floor by the light cleaners and transport them to dumping areas.

The heavy cleaners in group (2) clean daily the university's public lavatories. They dust and wet mop the floors, clean the toilets and sinks, empty the trash, and wash marks from the walls. Many of the heavy cleaners in this group assist the heavy cleaners in the first group with the job of removing trash. Depending on the load this takes from less than one-half hour to 2 hours daily.

In their wet mopping both of these groups use a dolly which carries two 44 quart buckets with wringers and cleaning solution. The dolly weighs 60 pounds empty and up to 140 pounds full. For larger areas they use mop trucks which hold 30 or 60 gallons. These weigh from 160 to 200 pounds empty and from 300 to 500 pounds

full. Trash removal is accomplished by the use of trucks. These are 6 feet long, 3 feet wide and 6 feet high, and weigh 200 pounds empty and up to 800 pounds full.

The heavy cleaners in groups (1) and (2) perform additional tasks on an occasional basis. These include loading, unloading and transporting drums of cleaning solvent which hold 55 gallons of liquid and weigh from 400 to 600 pounds; climbing 14 foot ladders to clean in high places and change light bulbs; vacuuming carpets with industrial machines which weigh from 74 to 96 pounds empty and from 122 to 192 pounds full; cleaning carpets with motorized pile lifters; shovelling snow from entrance ways; and turning on and off heavy ventilation equipment.

The special projects handled by group (3) of the heavy cleaners are jobs done regularly but infrequently. These include scrubbing and stripping floors, shampooing rugs and washing venetian blinds.

The work assignments of those classified in groups (1), (2) and (3) are not necessarily hard and fast. For example, in Avery Hall, one of the smaller buildings, one heavy cleaner wet mops all the corridors and staircases, cleans the lavatories and does any project work. (Two light cleaners handle the offices and libraries in that building). In contrast, in a large building such as Butler Library, assignments of the 5 heavy cleaners in the building are divided among the 3 classifications. (Eleven light cleaners are assigned to Butler).[6]

The heavy cleaners in group (4) are assigned to small converted office buildings located on streets adjacent to Columbia's main campus. They primarily perform light cleaning duties. Light cleaners handled these assignments until 1974 when considerations of security prompted Columbia to substitute male employees. The buildings involved are outside of the security perimeter of the main campus and are cleaned during the midnight to 8 A.M. shift.

6. Heavy cleaners predominate in some of the buildings. For example, Chandler, the chemistry building, has 3 heavy cleaners and 2 light cleaners. One heavy cleaner mops the laboratories and corridors; the second cleans the lavatories and removes the trash; the third does special project work. The 2 light cleaners handle the offices and library in the building.

Before the change heavy cleaners escorted the light cleaners from the main campus to these buildings and locked them in. Each light cleaner then spent the night alone in her respective building and later was escorted back to the main campus.

These off-campus buildings are the only exception to the otherwise uniform line of demarcation which Columbia maintains between "heavy" and "light" cleaning tasks. Written job descriptions listing the heavy and light cleaning tasks are incorporated in the collective bargaining agreements between Columbia and the Transport Workers' Union.[7]

The cleaners themselves are well aware of the distinction between heavy and light assignments and have not hesitated to enforce it. In 1971, for example, 8 light cleaners successfully protested an assignment to remove heavy trash. Columbia moreover has changed from "light" to "heavy" certain assignments which technically were in the "light" category but which in practice called for physical exertion comparable to that of the heavy cleaning tasks. The wastebaskets in the Journalism building, for example, frequently are filled with books, magazines and other heavy materials. After the light cleaners in the building complained of the resulting burden, the job of emptying these wastebaskets was reassigned to heavy cleaners. The heavy cleaners also collect the heavy trash which accumulates in the chemistry laboratories and the architecture drafting rooms.

The light cleaners' perception of the distinction between their duties and those of the heavy cleaners has manifested itself in other ways as well. Seven light cleaners applied for and were accepted as heavy cleaners when Columbia first opened the heavy cleaner category to women in 1972. On-the-job training commenced. By the end of 7 weeks, 4 of the 7 had transferred back to light cleaning.[8] No light cleaners have applied for heavy cleaner openings posted since that time. At trial several light cleaners testified that they had not applied for heavy cleaning positions because heavy cleaning tasks were beyond their capacity. As one of them put it, "I cannot do a heavier job than I have already."

There of course was much other evidence adduced at the 15 day trial, as appears in the 4 volume trial transcript. The foregoing summary is believed to be sufficient, however, for an understanding of our rulings below, especially in light of the district court's clear, concise and adequate findings of fact based on the undisputed evidence.

### III.

Since job content is a matter determined by the particular employer, whether two job classifications entail "equal work" under the Act necessarily must be decided on a case-by-case basis. *Brennan v. Prince William Hospital Corp.*, 503 F.2d 282, 286 (4 Cir. 1974), *cert. denied*, 420 U.S. 972 (1975); *Hodgson v. Golden Isles Convalescent Homes, Inc.*, 468 F.2d 1256, 1258 (5 Cir. 1972) (per curiam). The burden of proving that "equal work" is involved is on the Secretary. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974), *aff'g Hodgson v. Corning Glass Works*, 474 F.2d 226 (2 Cir. 1973). But in meeting that burden the Secretary does not have to prove that the duties performed are identical. A violation of the Act may be proven if the "skill, effort, and responsibility" required in the performance of the jobs is "substantially equal." *Hodgson v. Corning Glass Works, supra*, 474 F.2d at 234; *Schultz v. Wheaton Glass Co.*, 421 F.2d 259, 265 (3 Cir.), *cert. denied*, 398 U.S. 905 (1970). One court has suggested a balancing function in applying this "substantially equal" test:

"[Congress] did not authorize the Secretary or the courts to engage in wholesale reevaluation of any employer's pay structure in order to enforce their own concep-

---

7. The Transport Workers' Union is the exclusive bargaining agent for all of Columbia's custodial and maintenance employees.

8. Two of the group remain as heavy cleaners. The seventh has transferred to a position outside of the buildings and grounds department.

tions of economic worth . . . . But if courts defer to overly nice distinctions in job content, employers may evade the Act at will." *Brennan v. Prince William Hospital Corp., supra,* 503 F.2d at 285.

■ The "equal effort" criterion—the principal issue in the instant case—has been elaborated upon extensively in prior cases and in the interpretive bulletin promulgated by the Secretary. 29 C.F.R. §§ 800.114–800.163 (1976).[9] Under the Act, "effort" is the physical or mental exertion required in performing a job. So long as the ultimate degree of exertion remains comparable, the mere fact that two jobs call for effort different in kind will not render them unequal. *Brennan v. South Davis Community Hospital,* 538 F.2d 859, 863–64 (10 Cir. 1976); *Brennan v. Board of Education, Jersey City, New Jersey,* 374 F.Supp. 817, 827 (D.N.J. 1974); 29 C.F.R. § 800.127 (1976). Nor will effort expended on additional tasks assigned to male employees necessarily suffice to justify a pay differential. If the additional tasks do not consume a significant total amount of all of the employees' time, *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1049 (5 Cir.), *cert. denied,* 414 U.S. 822 (1973); *Hodgson v. Brookhaven General Hospital,* 436 F.2d 719, 725 (5 Cir. 1970); or if female employees also perform duties which require additional effort, *Brennan v. Prince William Hospital Corp., supra,* 503 F.2d at 286; or if third persons who perform the additional tasks as their primary job are paid less than the male employees in question, see *Shultz v. Wheaton Glass Co., supra,* 421 F.2d at 266—in these situations the additional effort is insufficient to differentiate the male positions under the Act.

These rules, formulated to embrace situations where differences in effort are merely illusory, Ross and McDermott, *The Equal Pay Act of 1963: A Decade of Enforcement,* 16 B.C.Ind. & Com.L.Rev. 1, 38 (1974), significantly limit the weight which should be given to the fact that male and female employees who perform similar work in fact perform different duties. The Secretary contends on the facts of this case that the application of these rules requires reversal. His argument has two prongs. First, he argues that, notwithstanding the differences between the particular tasks performed by the heavy and light cleaners, they ultimately expend equivalent amounts of effort. What the light cleaners save in not having to deal with heavy equipment, so the argument goes, they expend in having to cover larger areas and in handling additional fixtures and furniture.[10] Second, he attacks the significance the district court attached to the heavy cleaners' heavier equipment. According to the Secretary, there is "nothing in the record . . . to support the court's assumption . . . that the [heavy cleaners'] equipment . . . which was either used for infrequent periods or in combination with other [heavy cleaners] or was on wheels and could be moved easily, required any greater effort."

Turning to the first prong, it is true that the light cleaners cover a great deal of ground each night. But the evidence of distribution of work assignments among the buildings shows that the amount of ground covered by the heavy cleaners, while less extensive by some number of square feet not specified by the Secretary, cannot be dismissed so easily. The very heavy cleaners the Secretary singles out as responsible for small areas testified to difficulties in completing their daily assignments. Moreover the Secretary's own expert witness testified that the heavy cleaners' corridors,

9. Other courts have used the Secretary's interpretation as an aid in applying the Act. E. g., *Brennan v. Owensboro-Daviess County Hospital,* 523 F.2d 1013, 1028 & n. 13 (6 Cir. 1975).

10. The mainstay of the Secretary's argument in this respect is a comparison between the daily responsibilities of two light cleaners and those of two heavy cleaners assigned to the public lavatories in the same academic building. Specifically, a light cleaner responsible for 60 library "cubicles", 8 carpeted offices, 5 other rooms, a classroom, a private toilet, and a flight of stairs, is compared with a heavy cleaner responsible for the 16 public lavatories, ranging in size from 1 toilet and sink to 4 toilets and sinks, and the trash detail in a building used by 10,000 people daily.

lobbies, stairways, elevators and lavatories collect a greater concentration of dirt than do the light cleaners' offices and classrooms and hence require greater cleaning effort.

As for the second prong, we believe that the district court attached appropriate significance to the heavy cleaners' equipment. The record clearly supports the inference that the heavy cleaners' principal task of wet mopping heavily traversed areas requires greater physical effort than wielding dust mops and rags. This is true not only because the surfaces are dirtier but also because the equipment is substantially bulkier and heavier.

The concept of "effort" in the Act is straightforward. It calls for a direct comparison of the amount of physical exertion required by the jobs; there is no factor added to compensate for physiological differences between men and women. Based on our careful review of the record before us we cannot say that the district court was clearly erroneous in making this direct comparison and in finding as a fact that heavy cleaning involves "greater effort".

We are mindful of other cases which, in applying the Act to janitors and maids who perform the same general cleaning duties as Columbia's heavy and light cleaners, have held that the jobs involve substantially equal effort. *Brennan v. South Davis Community Hospital, supra*, 538 F.2d at 863–64; *Brennan v. Goose Creek Consolidated Independent School District*, 519 F.2d 53, 58 (5 Cir. 1975); *Brennan v. Board of Education,*

*Jersey City, New Jersey, supra*, 374 F.Supp. at 828–29; but see *Marshall v. Marist College*, No. 74 Civ. 4713-LWP (S.D.N.Y. June 29, 1977.) Close scrutiny of the facts of these cases, however, shows that the division of duties in the instant case is materially different. The cited cases follow the fact pattern which has emerged as the dominant one in cases under the Act involving all types of work. The central fact is the sharing of common responsibilities by male and female workers. The most frequently litigated question is whether additional lifting, fetching, hauling or other tasks performed by men require an amount of additional effort sufficient to foreclose a holding of substantial equality under the Act. For the most part the cases have concluded that the additional duties are either too insubstantial in amount or too inconsistently assigned to measure up to the Act's standard of substantial equality.[11] See also *Hodgson v. Corning Glass Works, supra*, 474 F.2d at 234; *Peltier v. City of Fargo*, 533 F.2d 374, 376–79 (8 Cir. 1976); *Brennan v. Prince William Hospital Corp., supra*, 503 F.2d at 286–90; *Hodgson v. Behrens Drug Co., supra*, 475 F.2d at 1048–50, 1051; *Hodgson v. Golden Isles Convalescent Homes, Inc., supra*, 468 F.2d at 1257–58; *Schultz v. American Can Co.-Dixie Products*, 424 F.2d 356, 360–61 (8 Cir. 1970); *Schultz v. Wheaton Glass Co., supra*, 421 F.2d at 262–63.

In the instant case, by contrast, the male employees' duties consistently require

---

11. In *Brennan v. South Davis Community Hospital, supra*, the janitors and maids performed common duties, except that the janitors (1) occasionally operated a floor stripping machine; (2) refilled a soft drink machine; (3) carried trash cans to an outside receptacle; (4) used ladders; and (5) shovelled snow. The maids also worked on ladders, occasionally carried trash, and had additional cleaning duties not shared with the janitors. The Tenth Circuit, while recognizing that the janitors' additional duties did require "extra effort", found the amount too insubstantial to preclude the Act's application. 538 F.2d at 863–64.

*Brennan v. Goose Creek Consolidated Independent School District, supra*, was to the same effect. There the employer's job description somewhat resembled the actual division of

duties at Columbia. But in practice the janitors and maids did almost identical work. 519 F.2d at 58.

In *Brennan v. Board of Education, Jersey City, New Jersey, supra*, the maids and janitors both performed the basic wet mopping, sweeping, and dusting in classrooms, corridors and lavatories. The court found the janitors' yard work, snow removal, ladder work, light hauling and floor stripping either too incidental to overcome the basis in "common chores [performed] for the bulk of the workday" or balanced by additional tasks assigned to the maids. 374 F.Supp. at 828–29.

See also *Hodgson v. San Diego Unified School District*, 71 CCH Lab. Cas. ¶ 32,390 (S.D.Cal.1973).

greater effort. Columbia's job classifications cannot be equated with the makeweight classifications so frequently found in the prior cases. See *Angelo v. Bacharach Instrument Co.*, 555 F.2d 1164, 1172 & n. 11 (3 Cir. 1977). Moreover, since the "additional" duties of Columbia's heavy cleaners in fact comprise their entire jobs, the increment of effort involved is more "substantial" than that involved in any of the cases cited above.

Both management and employees at Columbia for more than 30 years have recognized the existence of a material difference in the amount of effort required by heavy and light cleaning. The job classifications here involved never were entirely sex-based. Ever since 1949, long before most heavy cleaning positions were opened to women on an equal basis, Columbia has paid heavy cleaners' wages to women employed in tasks equivalent to those performed by the male cleaners. See note 5 *supra*. The record shows that the light cleaners are cognizant of the difference. It supports a finding that even today it is the additional effort demanded of heavy cleaners which has deterred the vast majority of Columbia's light cleaners from availing themselves of the opportunity to eliminate the 45 cent hourly disparity in pay.

Based on this evidence of the understanding and experience of those most closely involved, together with the undisputed fact that heavy cleaning calls for greater effort, we hold, as the district court did, that heavy and light cleaning are not substantially equal work within the meaning of the Act.

■ In reaching this conclusion we have excluded from consideration the comparatively small number of heavy cleaners assigned to off-campus office buildings who perform work identical to that performed by the light cleaners on campus. On the face of it, this recently created category of heavy cleaners would fall within the frequently cited rule mentioned above that additional tasks must "consume a significant amount of the time of *all* those whose pay differentials are to be justified in terms

of them. . . ." *Hodgson v. Brookhaven General Hospital, supra,* 436 F.2d at 725. See also 29 C.F.R. § 800.128 (1976).

But assuming that this strict reading of the statute applies to the heavy cleaners assigned to off-campus buildings, even though the majority of the employees in the "male" classification perform work consistently demanding greater effort than that required in the "female" classification, an additional factor precludes its application here. Judge Owen found that the light cleaning in question is performed "alone at night in off-campus buildings located outside the University's security perimeter." Taken in the context of his opinion, this necessarily implies a further finding that the off-campus work is performed in more dangerous conditions. The record does show that solicitude for the safety of the light cleaners motivated Columbia to change the assignments.

These circumstances call for the application of the provision of the Act which permits pay differentials between work performed under dissimilar "working conditions". As defined by the Supreme Court in *Corning Glass Works v. Brennan, supra,* 417 U.S. at 202, this concept encompasses the "hazards" of employment. Specifically, "the physical hazards regularly encountered, their frequency, and the severity of injury they can cause" are taken into account. *Id.*; see *Hodgson v. Corning Glass Works, supra,* 474 F.2d at 231. This case does not involve the dangers of a machine on an assembly line, but the risk of exposure to urban crime faced by women working alone and unguarded in the middle of the night. So long as the hazard is a genuine one, however, its source is not determinative under the Act.

■ True, the record here does not show that any light cleaner, on or off campus, has been a victim of crime while on the job. One court has demanded such tangible proof of a hazard's existence before applying the "working conditions" provision of the Act. See *Hodgson v. Daisy Manufacturing Co.*, 317 F.Supp. 538, 543–44 (W.D. Ark.1970), *aff'd per curiam,* 445 F.2d 823

(8 Cir. 1971). In the instant case however we hold that the imposition of such a threshold requirement would be unreasonable. Columbia, a great university forced to cope with the sometimes uncongenial contemporary urban environment, is entitled to recognition of the preventive measures it takes. Moreover the university's good faith in this matter is not open to question. Only genuine concern could have motivated it to increase its custodial costs and, barely two months before the instant action was commenced, risk an adverse legal impact. Indeed, the Secretary has described Columbia's action in reassigning these buildings to the heavy cleaners as "laudable".

Nor do we attach significance to the fact that the heavy cleaners have not had these off-campus assignments during the indefinite past. Any other interpretation of the Act would deter employers who maintain job classifications in compliance with the Act from taking corrective action once they conclude that some existing security or safety arrangement is unsatisfactory. We decline to sanction any such interpretation of the Act.

Affirmed.

OAKES, Circuit Judge (dissenting):

I respectfully dissent.

The majority correctly states the test of law under the Equal Pay Act of 1963:[1] "equal work" need not be "identical" work; as stated by Judge Friendly, "inconsequential differences can be disregarded as long as the jobs are 'substantially equal.'"

*Hodgson v. Corning Glass Works*, 474 F.2d 226, 234 (2d Cir. 1973), *aff'd sub nom. Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *accord, e. g., Brennan v. South Davis Community Hospital*, 538 F.2d 859, 861 (10th Cir. 1976); *Shultz v. Wheaton Glass Co.*, 421 F.2d 259, 265 (3d Cir.), *cert. denied*, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). Because I think that the district court misconceived this test, I would reverse and remand without indulging in the appellate factfinding that it seems to me otherwise becomes necessary to sustain the judgment below.[2]

The district court evidently thought that the fundamental question is whether the light and heavy cleaners' jobs are the *same*, not whether they are *substantially* equal. This erroneous standard appears in the explicit language of the court's opinion:

> In any E.P.A. action the threshold question always is: are the jobs equal. Plaintiffs have the burden of proving that as the aggrieved parties they perform *equal* work, not merely that a wage differential exists and that the jobs are similar.

407 F.Supp. at 1374 (emphasis in original). The district court's "equal" is not qualified by the requisite "substantially."[3] The court's conclusory factual discussion, too, reveals an application of the wrong legal test. It finds that "[w]hile there are *many similarities* between the work done by the light cleaners and heavy cleaners, their work is *not the same*." *Id.* at 1374 (emphasis added). The district court then concludes that "the jobs of light cleaner and heavy cleaner are different," in that

**1.** 29 U.S.C. § 206(d)(1) (1970).

**2.** Were I to engage in this exercise, I am doubtful that I would arrive at the same result as the majority, but I do not consider factfinding my function.

**3.** True, the opinion quotes from *Hodgson v. Corning Glass Works* which enunciates the substantially equal test. The quote in its entirety is as follows:
> [T]he complaint must be dismissed even if the wage differentials were unreasonably large in comparison with the actual differences in skill, effort, responsibility or working conditions and were based on discriminatory motivation; Congress did not intend to

put either the Secretary or the courts in the business of evaluating jobs and determining what constituted a proper differential for unequal work.

407 F.Supp. at 1374 (quoting *Hodgson v. Corning Glass Works*, 474 F.2d 226, 231 (2d Cir. 1973), *aff'd sub nom. Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974) (footnote omitted)). This portion of *Hodgson*, however, does not address the issue when jobs are substantially equal. It discusses the requirement of dismissal once it is determined that the work is not substantially equal, notwithstanding excessive wage differentials between the unequal jobs.

"[g]oing beyond the job descriptions . . it is clear that the job of heavy cleaner involves greater effort than that of light cleaner." *Id.* at 1374–75 (footnotes omitted). It is therefore apparent that in the district court's eyes the critical inquiry is whether the work is the "same" or "different."

The district court's failure to use the proper test is further demonstrated by the lack of analysis relevant to the issue of substantiality. Thus, the district court concludes, without specific evidentiary findings, that "the job of heavy cleaner involves greater effort than that of light cleaner." *Id.* at 1375.

But nowhere is it said that the differences between the jobs are of such magnitude that they fail to meet the judicially imposed substantiality test. As the Tenth Circuit recently explained in a similar case upholding the trial court's determination of substantially equal custodial jobs, "[a]ll the

work was within the general cleaning function and the slight differences in kinds of effort would not prevent a finding of substantially equal efforts." *Brennan v. South Davis Community Hospital, supra,* 538 F.2d at 864.[4] Nor does the district court's opinion refer to very similar cases from other jurisdictions[5] which have found maid and janitorial functions to be substantially equal under the Act. Such a discussion would seem essential because these cases analyze the degree of similarity between maid and janitor work sufficient to meet the legal test and come to a conclusion contrary to that of the district court.

In short, the opinion below indicates to me that the district judge was proceeding under a misapprehension of law. The only remaining question, then, assuming this to be true, is whether the undisputed facts are so clear that we are *required* as a matter of law to reach the same conclusion even under the correct, substantiality test. *Cf.*

**4.** To be sure, this particular holding was rendered after the court below decided this case. However, it rested on the Secretary's regulations which were not alluded to, though available, below, and which had been relied on in *Brennan v. Board of Educ., Jersey City, N. J.,* 374 F.Supp. 817, 828–29 (D.N.J.1974), in applying the substantial equality standard. The regulations provide in pertinent part:

Effort is concerned with the measurement of the physical or mental exertion needed for the performance of a job. Where jobs are otherwise equal under the Act, and there is no substantial difference in the amount or degree of effort which must be expended in performing the jobs under comparison, the jobs may require equal effort in their performance even though the effort may be exerted in different ways on the two jobs. Differences only in the kind of effort required to be expended in such a situation will not justify wage differentials.

29 C.F.R. § 800.127 (1976). These regulations also furnish examples to aid in determining whether equality of effort exists in a given case:

To illustrate the principle of equal effort exerted in different ways, suppose that a male checker employed by a supermarket is required to spend part of his time carrying out heavy packages or replacing stock involving the lifting of heavy items whereas a female checker is required to devote an equal degree of effort during a similar portion of her time to performing fill-in work requiring greater dexterity—such as rearranging dis-

plays of spices or other small items. The difference in kind of effort required of the employees does not appear to make their effort unequal in any respect which would justify a wage differential, where such differences in kind of effort expended to perform the job are not ordinarily considered a factor in setting wage levels. Further, the occasional or sporadic performance of an activity which may require extra physical or mental exertion is not alone sufficient to justify a finding of unequal effort.

29 C.F.R. § 800.128 (1976). While the regulations are not controlling upon the courts, they do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

**5.** *E. g., Brennan v. Goose Creek Consol. Indep. School Dist.,* 519 F.2d 53, 58 (5th Cir. 1975); *Brennan v. Board of Educ., Jersey City, N. J., supra,* 374 F.Supp. at 828–30. Subsequent to the district court's opinion, the Tenth Circuit also found maid and janitorial efforts substantially equal. *Brennan v. South Davis Community Hosp., supra,* 538 F.2d at 863–64.

*Yanish v. Barber*, 232 F.2d 939, 947 (9th Cir. 1956) (remand is unnecessary when findings are insufficient if the record presents no genuine issue of material fact) (quoting *Burman v. Lenkin Construction Co.*, 80 U.S. App.D.C. 125, 126, 149 F.2d 827, 828 (1945)); W. Barron & A. Holtzoff, *Federal Practice and Procedure* § 1138, at 570–71 (Wright ed. 1961) (same).

Without belaboring the issue I think that the facts are not so clear. They cannot be said to compel the conclusion that cleaning "public" areas such as hallways and lobbies requires more overall effort than cleaning less trafficked areas such as offices, classrooms or libraries, or that the heavier equipment necessary for the former job, which is either used for infrequent periods or jointly with other janitors or is on readily movable wheels, requires greater overall effort. The effort expended by janitors who are required to clean public areas frequently and to use a wet mop would appear to be balanced by the effort of maids who must clean larger areas, move furniture in order to vacuum, clean hard-to-reach areas, and dust, wash and wax furniture. As the majority notes, "[s]o long as the ultimate degree of exertion remains comparable, the mere fact that two jobs call for effort different in kind will not render them unequal." *Ante*, at 959.

There appear to be two differences between the work of the restroom janitors and the maids: the former use a wet mop and some of them push trash trucks out to the street. The minimal weight differential between wet and dry mops (two or three pounds as compared to one-quarter pound) hardly requires a finding of substantial extra effort, especially when the dry mops must be maneuvered around large numbers of seats and benches.[6] Similarly, the pushing of trash trucks for eight to twenty minutes a day is not so enormous a task as to *require* a finding of substantial difference as a matter of law. In fact these differences could be considered minor and incidental under the correct test. *See Brennan v. South Davis Community Hospital, supra*, 538 F.2d at 863–64; *Shultz v. American Can Company-Dixie Products*, 424 F.2d 356, 360 (8th Cir. 1970). I could go on, but consider it unnecessary. The cleaning jobs do not, as a matter of law, fall outside the confines of the act.

Firmly believing that Judge Owen would give the facts a different application were he to have before him the correct test of law that my brethren duly evoke, I would let him have the opportunity to do so rather than sustain him as a matter of law on the facts. I therefore dissent, and would reverse and remand.

---

**6.** The heavier water pails carried on dollies with a total loaded weight of 140 pounds are not significantly different from the maids' 111-pound cleaning carts. Furthermore, the maids carry their lighter water pails by hand.