Ray MARSHALL, Secretary of Labor, United States Department of Labor, Appellant,

v.

BUILDING MAINTENANCE CORPORATION, Appellee.

No. 28, Docket 78–6036.

United States Court of Appeals, Second Circuit.

Argued Oct. 12, 1978.

Decided Nov. 13, 1978.

---

Lois G. Williams, Atty., U. S. Dept. of Labor, Washington, D. C. (Carin Ann Clauss, Sol. of Labor, Donald S. Shire, Associate Sol., Washington, D. C., Albert H. Ross, Regional Sol., Boston, Mass., Kerry Adams, Atty., U. S. Dept. of Labor, Washington, D. C., of counsel), for appellant.

Morris B. Abram, New York City (Ronald W. Meister, Steven S. Honigman, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel), for appellee.

Before LUMBARD and OAKES, Circuit Judges, and MacMAHON, District Judge.[*]

PER CURIAM:

The Secretary of Labor appeals from a judgment of the United States District Court for the District of Connecticut, M. Joseph Blumenfeld, Judge, which held that defendant, Building Maintenance Corporation ("BMC"), did not violate the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1).[1] The district court found that the virtually all-female "light duty" cleaners employed by defendant were not doing work which was equal in effort, skill, responsibility, or working conditions to the work of the predominantly male "heavy duty" cleaners employed by defendant at a higher wage. The Secretary contends that the trial judge applied an incorrect standard of "equal work," or that if the trial judge did apply the correct standard, the evidence does not support his finding that the work of the two groups was not equal. We find that the trial judge did not use an incorrect standard of "equal work," and that there is sufficient evidence to uphold his finding of inequality of work. Thus we affirm substantially on the memorandum of decision of the district court.

BMC provides day-to-day cleaning and maintenance services for commercial buildings in and around Hartford, Connecticut. It has two classes of employees engaged in maintenance: heavy duty cleaners and light duty cleaners, the former paid at a higher hourly rate. At trial, June, 1977, fewer than 70 of the approximately 350 heavy duty cleaners were women, and only one of the nearly 400 light duty cleaners was a man. All light duty cleaners perform the same tasks: dusting furniture, emptying ashtrays and wastebaskets, spot dusting and cleaning walls and floors, some damp mopping and vacuuming, cleaning lavatories, and replacing bathroom supplies. The jobs of heavy duty cleaners are more varied. Some strip, wax and buff floors. Some only remove heavy trash. Some have more general duties using equipment not used by the light cleaners such as heavier vacuums, 400-pound mopping tanks, ladders and scaffolding, and large carts carrying 50-gallon drums of cleaning material and boxes of other supplies to be distributed throughout the building.

The Secretary may carry his burden of proof under the Equal Pay Act by showing that the skill, effort, responsibility, and working conditions of the two different types of jobs are "substantially equal." *Usery v. Columbia University,* 568 F.2d 953, 958 (2d Cir. 1977); *Hodgson v. Corning Glass Works,* 474 F.2d 226, 234 (2d Cir. 1973), aff'd, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). Additional or different tasks assigned to male employees which require more effort than tasks done in common will justify a pay differential only if the additional tasks consume a significant amount of all of the male employees' time. *Usery v. Columbia University, supra,* 568 F.2d at 959, 961; *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1049 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973); *Hodgson v. Brookhaven General Hospital,* 436 F.2d 719, 725 (5th Cir. 1970).

The Secretary contends that the trial judge, in his findings of fact, compared the light duty cleaners with those specialized heavy duty cleaners whose jobs require the most effort instead of with those heavy duty cleaners whose jobs required the least

---

[*] Of the Southern District of New York, sitting by designation.

[1] 29 U.S.C. § 206(d)(1) provides in part:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions  . .  . .

effort and whose jobs are the most similar to the jobs of light duty cleaners. As we read Judge Blumenfeld's memorandum of decision, however, we find that in considering equality of effort he compared the tasks of a light duty cleaner with the distinguishing duties of those heavy duty cleaners who are least specialized.[2] Therefore, we cannot agree with the Secretary on this issue.

■ The Secretary also contends that the evidence, if weighed under the correct standard, is not sufficient to support the trial judge's finding of inequality of work. The Secretary, relying upon "the frequently cited rule . . . that additional tasks must 'consume a significant amount of the time of *all* those whose pay differentials are to be justified in terms of them,'" *Usery v. Columbia University, supra,* 568 F.2d at 961, citing *Hodgson v. Brookhaven General Hospital, supra,* 436 F.2d at 725,[3] alleges that certain heavy duty cleaners do not spend a significant amount of time doing tasks not done by light duty cleaners. The Secretary advances the testimony of eight heavy duty cleaners and twenty-six of BMC's own job descriptions to support his position. For the reasons below we do not agree with the Secretary that the trial judge's finding of inequality of work is clearly erroneous.

■ The job descriptions advanced by the Secretary are not persuasive. BMC denies

---

2. Light duty cleaners dust desks, empty ash trays, empty waste baskets into trash bags and replace liners if necessary. They do spot dusting of walls or spot cleaning of walls and clean fruit juice and coffee spots off tile floors by wiping them with a rag dampened with Fantastik or some cleaning fluid in a spray bottle. They also damp mop some tile floors and stair treads, vacuum rugs, replace supplies in toilet areas, and wipe out sinks. Although several of the women light duty cleaners testified that some of the work they did required effort equal to that done by the heavy duty cleaners, I do not credit that testimony.

By comparison heavy duty cleaners wax floors, remove the heavy trash, change fluorescent and other light bulbs, and clean those light fixtures and screens. The heavy duty cleaners for sustained periods of time move heavy bags of trash, load them into either gondolas or an elevator, load them into a compactor, or pile them into a trucker trailer. They load and unload 50-gallon drums of cleaning material and boxes of other supplies. As distinguished from the dry mopping done by light duty cleaners, heavy duty cleaners must use a big metal container when scrubbing floors. It contains about 40 gallons of water, and probably weighs 350 to 400 pounds. They move it along with them as they do their chores through the evening. Wet mopping floors requires more exercise than dry mopping. The heavy duty cleaners carry ladders from place to place, carry and put up scaffolding, and do high dusting. (Light duty cleaners are limited to dusting what can be reached within an arm's length while standing on the floor.) The heavy duty cleaners climb ladders and require physical agility and balance to work on them. These actions require more physical effort than light duty cleaners expend.

Although a comparison of the work done by light and heavy duty cleaners could be made in more detail, it would only add further support to my finding that the effort expended by heavy duty cleaners far exceeds that of the light duty cleaners.. On this issue the plaintiff has not successfully borne the burden of proof.

*Marshall v. Building Maintenance Corp.,* No. H–74–259, Memorandum of Decision at 5–7 (D.Conn. Dec. 15, 1977).

3. Although *Usery v. Columbia University,* 568 F.2d 953 (2d Cir. 1977), does quote this rule, adding emphasis to "all" that is not in the case cited for the proposition, *Hodgson v. Brookhaven General Hospital,* 436 F.2d 719 (5th Cir. 1970), the panel majority in *Columbia University* explicitly does *not* decide whether "this strict reading of the statutes applies." Rather, it merely assumes strict application but distinguishes the off-campus university employees as having more risky jobs. 568 F.2d at 961. The *Brookhaven* case simply uses the word "all," without emphasis, in describing the emerging rule; in the same paragraph, indeed, the court says something quite different:

Employers may not be permitted to frustrate the purposes of the Act by calling for extra effort only occasionally, or only from one or two male employees, or by paying males substantially more than females for the performance of tasks which command a low rate of pay when performed full time by other personnel in the same establishment.

436 F.2d at 725. The regulation, 29 C.F.R. § 800.128, cited in *Columbia University,* 568 F.2d at 961, for the "rule" set forth in the text, does use the word "all," but not to support the strict or absolute reading that the Secretary would give it:

For example, if all women and some of the men performing a particular type of job do not perform heavy lifting, and some men do, payment of a higher wage rate to all of the men than to the women would constitute a prohibited wage rate differential if the equal pay provisions otherwise apply.

that the job descriptions have any probative value, citing the Secretary's own regulations to this effect: "[a]pplication of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance." 29 C.F.R. § 800.121. *See also Brennan v. Victoria Bank & Trust Co.,* 493 F.2d 896, 899 (5th Cir. 1974) ("the controlling factor in equal pay allocations has to be *job content,* not the job description prepared by the employer") (emphasis in original). We cannot agree with BMC; in a case where the job descriptions are introduced against the employer who made them, and the employer has adequate opportunity to introduce evidence that the job descriptions are inaccurate, job descriptions can be probative of job content.[4] In this case, however, the Secretary must show not only that the heavy duty cleaners share many tasks with light duty cleaners, which the job descriptions do show, but that the additional tasks performed by the heavy duty cleaners do not consume a substantial amount of their time. As the job descriptions fail to state how much time is spent on each activity listed, and each job description includes several tasks not performed by light duty cleaners, the trial judge could legitimately find that the Secretary had failed to prove that the jobs described were "substantially equal" to the job of a light duty cleaner.

The Secretary also relies upon the testimony of eight heavy duty cleaners. Each of the eight testified to performing general cleaning duties similar to those performed by light duty cleaners with a few additional duties not performed by light duty cleaners. We believe that the trial judge could have found solid justification in the testimony of two of the heavy duty cleaners that they spent a substantial amount of time performing additional duties.[5] It is more difficult, however, to find that the other six heavy duty cleaners spent a substantial amount of time at the additional tasks. Three clearly spent only a trivial amount of time doing additional tasks;[6] the remaining three spent two or three hours a week on additional tasks,[7] which arguably would not be a "significant" amount of time spent on additional tasks under some prior cases.[8]

We must therefore consider whether the "frequently cited" rule that the additional tasks must consume a significant

4. *See Brennan v. Owensboro-Daviess County Hosp.,* 523 F.2d 1013, 1017 (6th Cir. 1975), *cert. denied,* 425 U.S. 973, 96 S.Ct. 2170, 48 L.Ed.2d 796 (1976); *cf. Brennan v. Victoria Bank & Trust Co.,* 493 F.2d 896, 899 (5th Cir. 1974) (employer's rating of jobs should not be ignored simply because the employer made it); *Hodgson v. Brookhaven Gen. Hosp., supra,* 436 F.2d at 724 (because job descriptions may or may not fairly describe job content, trial judge must look to circumstances and other testimony to decide how much credit the job descriptions deserve).

5. From the testimony the court could have found that Anthony Sipala spent 10% of his time moving furniture, plus additional time loading and unloading supplies and taking garbage outside. Eddie Hill does substantial outside cleaning and also cleans and polices during the day a heavily used entranceway, lobby, and a set of six elevators and 40 flights of stairs.

6. James Davis, who worked during the summers of 1971 and 1972, performed no heavy cleaning duties except once when he used a ladder to replace light bulbs. George Anderson, in his first four years at BMC (1972–76) had no heavy cleaning duties. Eddie Finlay, age 66, for the last year and a half before the trial (1976–77) did general cleaning with a small amount of "high dusting." (Light duty cleaners do not dust over arm's reach; heavy duty cleaners use ladders or other devices.)

7. General Grady, who worked the past six years for BMC, did some heavy vacuuming and took trash out to a Dumpster. Earl Noble for a year (1972) cleaned a computer room, spray buffing the floor two hours a week. Andrew Howaniec dusted venetian blinds with a stepladder and large overhead brush during the last couple of years (1975–76) before his retirement.

8. *See Brennan v. South Davis Community Hosp.,* 538 F.2d 859, 863–64 (10th Cir. 1976) (where janitors and maids performed common duties, except that the janitors occasionally operated a floor stripping machine, refilled a soft drink machine, carried trash cans to an outside receptacle, and shoveled snow, and where the maids occasionally carried trash and had additional cleaning duties not shared with the janitors, the court found the extra effort required by the janitors' additional duties too insubstantial to justify a pay differential); *Brennan v. Board of Educ., Jersey City, N.J.,* 374 F.Supp. 817, 827, 828–29 (D.N.J.1974).

amount of the time of *all* of the higher paid male employees is to be strictly interpreted to require the finding of a violation no matter how large the total number of employees involved and how small the number of higher paid employees performing substantially equal work. We specifically reserved this question in *Usery v. Columbia University, supra,* 568 F.2d at 961, discussed in note 3, *supra.* We hold that this rule is to be applied with a measure of reasonableness and not with absolute strictness.[9]

In this case, three heavy duty cleaners clearly did work "substantially equal" to that of light duty cleaners. But during the seven-year period at issue, except for a period of a few months, only one of them was doing "substantially equal" work at any one time.[10] Of the other three heavy duty cleaners who performed arguably "substantially equal" work, at most two were working at any one time.[11] Thus, in a company with 350 heavy duty cleaners and 400 light duty cleaners working at many different buildings, no more than three heavy duty cleaners—less than 1% of the total—at any one time performed work substantially equal to that of the light duty cleaners. It should also be noted that, in conformity with the various buildings that BMC cleaned, many of the heavy duty cleaners, and each of the suspect cleaners, had jobs tailored to the facility. In such a situation, where the jobs create a spectrum of degrees of difficulty, any line drawn between classes of workers will leave a very few workers on one side of the line with jobs slightly more difficult than, but "substantially equal" to, jobs on the other side of the line. Considering the large number

of light and heavy duty cleaners, the much greater effort some heavy duty cleaners expend than light duty cleaners, and the impossibility of drawing a line between the two groups such that no heavy duty cleaners perform work substantially equal to that of any light duty cleaners, we conclude that the rule that additional tasks must consume a *significant amount of the time* of *all* the higher paid employees need not be so rigidly applied in this situation. The maxim, de minimis non curat lex, still has meaning.

Accordingly, we uphold the determination of the trial judge that BMC's heavy duty cleaners do not perform work which is equal to the work of light duty cleaners within the meaning of the Equal Pay Act.

Affirmed.

---

**9.** Although the above rule is "frequently cited," this is the first case that we have found where a court was forced to decide whether to interpret the "rule" absolutely literally. In other cases invoking the rule, unlike the present case, the class of male employees performing substantially equal work was similar in size to the class of female employees and constituted a nontrivial proportion of all male employees in the job description. *See, e. g., Board of Regents of the Univ. of Nebraska v. Dawes,* 522 F.2d 380 (8th Cir. 1975) (92 male professionals paid less than 33 female professionals of similar qualifications), *cert. denied,* 424 U.S. 914, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976); *Hodgson v.*

*Behrens Drug Co.,* 475 F.2d 1041, 1048–50 (5th Cir.) (one female data processing supervisor compared with her male predecessor), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973); *Hodgson v. Brookhaven Gen. Hosp., supra* (all "nurse's aides" compared with all "orderlies"); *Brennan v. Sears, Roebuck & Co.,* 410 F.Supp. 84 (N.D.Iowa 1976) (six female division managers compared with eight male division managers of whom six did work substantially equal to that of the women).

**10.** *See* note 6 *supra.*

**11.** *See* note 7 *supra.*