**Ruth CAMPBELL, Plaintiff,**

v.

**VON HOFFMAN PRESS, INC., Defendant.**

**No. 76 CV 194–C.**

United States District Court, W. D. Missouri, C. D.

Jan. 23, 1980.

---

**6.** 15 U.S.C. § 78aa.

Richard Helfand, Panethiere & Helfand, Joseph R. Hachey, Kansas City, Mo., for plaintiff.

Michael D. Linihan, McMahon, Berger, Breckenridge, Hanna, Linihan & Cody, St. Louis, Mo., Kelly Pool, Hendren & Andrae, Jefferson City, Mo., for defendant.

## OPINION AND ORDER

ELMO B. HUNTER, District Judge.

This is an action brought pursuant to the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1). [hereinafter cited as EPA]. Plaintiff, a former employee of the defendant, seeks that this Court find that the defendant improperly paid plaintiff for the work she performed in violation of said statute; that it enter judgment against the defendant in an amount to be determined by the Court for the plaintiff's loss of wages due to the alleged improper payments together with interest thereon; that it enter judgment against the defendant for liquidated damages in the sum of Four Thousand Six Hundred and Fifty Eight ($4,658.00) Dollars; that it enter judgment against the defendant for reasonable attorneys fees; and that it enter judgment against the defendant for the cost of this action.

The case was fully tried to the Court on November 2, 1979 in Jefferson City, Missouri.

I.

The parties have stipulated that the following facts are admitted and require no proof:

1. Plaintiff is a female citizen of the United States, and a resident and domiciliary of the state of Missouri. Furthermore, plaintiff was an employee as defined in § 203(e) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 203.

2. Defendant, at all relevant times, was a corporation duly licensed to do business in the state of Missouri and an employer as defined by 29 U.S.C. § 203(d). Furthermore, defendant was engaged in commerce as defined by 29 U.S.C. § 203(b) and was also engaged in the production of goods for commerce as defined in 29 U.S.C. § 203(i) and (j).

3. Plaintiff was hired in the Jefferson City plant of defendant as a film assembler on or about September 26, 1974.

4. Mr. Sam Williams was hired by the defendant at its Jefferson City plant as a cameraman.

5. The cameraman rate was first included in a collective bargaining agreement effective January 1, 1974.

6. Plaintiff was paid at least the contract rate for her classification.

7. At the time the plaintiff was employed, male employees were paid on the basis of contractually established rates. Mr. Sam Williams was paid the contractual rate for a cameraman.

8. During her employment in the film assembly department, plaintiff was accelerated in her pay progression.

9. The camera equipment at defendant's Jefferson City facility was installed on or about December, 1975.

## II.

## DID DEFENDANT'S ACTIONS CONSTITUTE A VIOLATION OF THE EQUAL PAY ACT?

The plaintiff brings this action pursuant to the EPA which requires in pertinent part:

No employer having employees subject to any provision of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee. 29 U.S.C. § 206(d)(1).

For the reasons more particularly expressed below, this Court finds that the defendant has not violated the EPA, and therefore, plaintiff's suit should be dismissed.

Plaintiff was hired by defendant on September 26, 1974 to do film assembly work in defendant's printing plant operation in Jefferson City, Missouri. She holds a B.A. degree in commercial art from Central Missouri State University. Plaintiff had received training in printing processes both in school and at employment prior to her position with defendant.

During the course of plaintiff's employment, plaintiff testified that she was very angry and upset over the wage paid to Mr. Sam Williams. She testified that Mr. Williams did exactly the same work as she did and that he received $5.50 per hour. Plaintiff stated that she initially received $2.50 per hour.

Plaintiff testified that she worked on an illuminated table preparing film for use in the offset printing machines. During her tenure with defendant, the film assembly department was primarily staffed by plaintiff, Ms. Nancy Gopman and Mr. Sam Williams. Plaintiff and Ms. Gopman received pay at the film assembler rate and Mr. Williams at the rate for cameraman. The evidence also showed that during an early part of plaintiff's employment, Mr. James Pasley worked in her department at the film assembler's rate of pay.

Plaintiff's pay was raised on three separate occasions after she had inquired about the disparity between her pay and Mr. Williams'. Plaintiff testified that she pursued a number of remedies available to her. She complained to her union and filed complaints with the Department of Labor and the Equal Employment Opportunity Commission. Her final rate of pay was $3.61. Plaintiff stated that she resigned on September 4, 1975.

On cross-examination, plaintiff testified that she was fully aware that Mr. Williams' pay was a reflection of a different job classification. Also, plaintiff testified that no one ever suggested to her that Mr. Williams was paid more because he was male.

Sam Williams was hired on October 14, 1974 as a journeyman cameraman. The evidence showed that defendant did not acquire a camera until December, 1975. Mr.

Williams testified that he had been hired by Mr. Jack Gill who was the plant manager at defendant's Jefferson City facility. Mr. Gill testified that he decided that given the scarcity of journeyman cameramen in Jefferson City,[1] it would be a good business decision to hire Mr. Williams and "keep him on ice" until the camera was finally installed. Mr. Williams also testified that he would not have gone to work for defendant if it was going to involve a cut in pay.[2] Mr. Gill stated that the defendant had experienced difficulty in the past hiring and retaining employees recruited from areas beyond the Jefferson City region. Thus, Mr. Gill concluded that the opportunity to hire Mr. Williams in advance of the defendant's acquisition of the camera seemed to be a reasonable decision.

Mr. Frank Bowman, president of defendant, testified that the decision was made in 1971 to start an offset printing operation in Jefferson City. During July-August, 1971, the defendant acquired offset presses but had the camera work done off-premises. Mr. Bowman also stated that they built an 8500 square foot addition to the Jefferson City plant in 1972–73 in order to prepare for the advent of offset printing. The film assembly department was established in early 1974. Mr. Bowman testified that Mr. Harold Baucum was in charge of the program to buy the camera. Mr. Baucum presented Mr. Bowman with an opportunity to buy a used camera in late 1974, but Mr. Bowman rejected the proposal because the camera was not acceptable to him. Mr. Bowman further testified that Mr. Baucum was upset over this turn of events and resigned in January, 1975. Mr. Baucum was replaced by Mr. Joe Antonacci, who took charge of the program to acquire a camera.

At no time, according to Mr. Bowman, did defendant have a written timetable for the acquisition of the camera. Rather, he stated that it was to be acquired "as soon as possible." The final decision regarding which camera to buy was made in September, 1975, and the camera was delivered in December, 1975.

It was Mr. Bowman's opinion that the decision to hire Mr. Williams in October, 1974, was a good business decision in order to line up one of the necessary factors of offset production. The testimony of Mr. Antonacci corroborated Mr. Bowman's testimony on this point.

## ANTICIPATORY NEED AND INTERIM USE AS AN OTHER FACTOR THAN SEX EXCEPTION

 It is well settled in EPA cases that the burden of proof is on the plaintiff to prove that the defendant "pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1976); *see also, Di Salvo v. Chamber of Commerce of Greater Kansas City*, 416 F.Supp. 844, 852 (W.D.Mo.1976), *aff'd. as modified, Di Salvo v. Chamber of Commerce of Greater Kansas City*, 568 F.2d 593 (8th Cir. 1978). Further, once the plaintiff has successfully established these elements, the burden shifts to the defendant employer to show that the differential is justified under one of the four exceptions to the EPA. *See, Corning Glass Works v. Brennan, supra*; and *Katz v. School District of Clayton, Missouri*, 557 F.2d 153 (8th Cir. 1977).

 The evidence has clearly shown and plaintiff has met her burden of proof that she and Mr. Williams performed identical work requiring equal skill, effort and responsibility under similar working conditions during the period of their coterminous

---

1. Only two journeyman cameramen were in Jefferson City. Further, Mr. Joe Antonacci, who was one of the men in charge of the program to acquire a camera, testified that only twenty such cameramen were in the entire state of Missouri.

2. Mr. Williams received $4.55 per hour at his prior employment as a cameraman. His wage rate with defendant was set by the union contract.

employment. Indeed, this fact has not been challenged by defendant. Instead, the defendant argues that its decision to hire Mr. Williams as a cameraman in anticipation of the camera's arrival was good business judgment under the circumstances, and his temporary assignment to the film assembly department at the cameraman rate of pay does not constitute a violation of the EPA. Thus, the issue presented in this case is whether the wage differential that existed between plaintiff and Mr. Williams was based upon a "factor other than sex." 29 U.S.C. § 206(d)(1)(iv).

■ Counsel have not cited any case or authority considering anticipatory need and interim use as an other factor than sex exception. Nevertheless, this Court is firmly convinced that the defendant has carried its burden of proof justifying the differential. The evidence was totally devoid of any suggestion that defendant engaged in male-female wage differentials in any situation other than the pay differential between Mr. Williams and the other employees in the film assembly department. All the evidence showed was a differential in this one isolated situation.[3]

The defendant clearly demonstrated that it had been in the development of an offset printing process since 1971. When plaintiff was hired, all of the equipment for offset printing was in place except for the camera. Only two cameramen lived in Jefferson City and when Mr. Williams indicated a willingness to change employment, the defendant, in the belief that it would be a sound business decision, hired Mr. Williams in anticipation of installing the camera. Defendant put Mr. Williams to work in the film assembly department in order to keep him working until the camera arrived. Defendant agreed to pay Mr. Williams the

cameraman rate because Mr. Williams would not have changed employment but for the raise in pay. As well, given the limited availability of journeyman cameramen, and the uncontradicted testimony that defendant had experienced difficulty in the past in retaining employees hired from beyond the Jefferson City area, this Court can only conclude that defendant's decisions to hire Mr. Williams, to pay him the cameraman rate, and to place him in the film assembly department were based upon business judgment totally unrelated to sex.[4]

Furthermore, there is a policy concern inherent within plaintiff's theory that she has failed to adequately explain. If the EPA is read, as plaintiff desires, to make unlawful anticipatory hiring and temporary assignment at a higher wage rate to a lower pay job classification, then there is a serious question regarding the effect on the general function of business planning and development. Under plaintiff's theory in this case, a firm could not hire persons like Mr. Williams in advance of the firm's need for his services unless he would be assigned to a job with equivalently paid or higher paid workers; and, if this was not possible, the firm would just have to let him sit idle. Clearly, the "any other factor other than sex" exception was intended to apply in a circumstance involving a bona fide non-discriminatory business judgment to hire a trained or skilled person prior to actual need and to use such a person on an interim basis in a different, lower paid job classification.

Such a conclusion, of course, could never sanction a situation where a firm was hiring individuals under the pretense of anticipated need, but in actuality was seeking only to disguise an unlawful practice of wage discrimination.[5] Here, the Court has

---

**3.** Indeed, during an early portion of plaintiff's tenure, a male, Mr. Pasley worked in the classification of film assembler at the same rate as plaintiff. This Court notes this fact only to show the complete absence in this record of any pattern of prohibitive wage differentials on a sex basis in the film assembly department. Further, Mr. Williams never received any more

than the specified union contract rate for cameraman.

**4.** Nothing in the record indicates that Mr. Williams was hired because he was a male. His hiring was solely based upon his status as a qualified cameraman.

**5.** Many cases have held that job titles or classifications can not serve to conceal a practice of

not been shown any evidence to suggest that Mr. Williams' wage was set at the cameraman rate in order to circumvent the policies to be furthered by the EPA. There was nothing artificial about Mr. Williams' job classification. He was simply a journeyman cameraman temporarily reassigned pending arrival of the camera. The fact that the defendant took approximately a year in acquiring the camera is explained by the evidence that showed a change in personnel in charge of finding a suitable camera and that there was some confusion in management over the correct kind of camera to buy resulting in a very cautious approach to the purchase of the machine that was ultimately acquired. Indeed, Mr. Bowman testified that when he approved Mr. Williams' hiring he had an approximate expectation of a "few months" before the camera would be purchased; but that the above mentioned problems delayed the progress towards buying a camera considerably. This Court finds no evidence of any effort on the part of defendant to violate the EPA in the delay pending actual acquisition of the camera.

While apparently no case has, as yet, passed on the question of the sufficiency of anticipatory need and interim use as an other factor than sex exception, there are some instructive guideposts. 29 C.F.R. § 800.147 allows for an employer to pay "red circle" rates[6] to an employee who is temporarily reassigned.

> "For instance, an employer who must reduce help in a skilled job may transfer employees to less demanding work without reducing their pay, in order to have them available when they are again needed for their former jobs. Although employees traditionally engaged in performing the less demanding work would be paid at a lower rate than those employees transferred from the more skilled jobs; the resultant wage differential would not constitute a violation of the equal pay provisions since the differential is based on factors other than sex. 29 C.F.R. § 800.147 (1979).

While this language deals with current employees who are moved between departments in a firm, the general principle of a temporary reassignment as an other factor than sex exception is analogous to this case insofar as Mr. Williams, although a new employee, could be said to be temporarily reassigned to the film assembly department. *See generally*, Sullivan, *The Equal Pay Act of 1963: Making and Breaking a Prima Facie Case*, 31 Ark.L.Rev. 545, 601 (1978).

On the other hand, plaintiff argues that the facts before this Court are analogous to the "more valuable employee" type cases. *See, Lambert v. Beach Enterprises*, (E.D. Ark.1978), 20 F.E.P. 1169; *Brennan v. South Davis Community Hospital*, 538 F.2d 859 (10th Cir. 1976); *Brennan v. Prince William Hospital Corp., supra; Hodgson v. Brookhaven General Hospital*, 436 F.2d 719, *appeal after remand*, 470 F.2d 729 (5th Cir. 1970); *Shultz v. Wheaton Glass Co., supra; Shultz v. American Can Co.—Dixie Products*, 424 F.2d 356 (8th Cir. 1970); *Brennan v. Sears, Roebuck & Co.*, 410 F.Supp. 84 (D.C.Iowa 1976); and *generally*, R. Blumrosen, *Wage Discrimination, Job Segregation, and Title VII of the Civil Rights Act of 1964*, 12 U. of Mich.J. of L.Ref. 399, 439 (1979). In such cases, the respective courts rejected arguments that the male employees were more valuable because they can perform extra duties occasionally. These

---

actual wage discrimination. See, *Katz v. School District of Clayton, Missouri*, supra; *Brennan v. Prince William Hospital Corp.*, 503 F.2d 282 (4th Cir. 1974), cert. denied, 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975); *Brennan v. Owensboro-Daviess County Hospital, City of Owensboro, Kentucky*, 523 F.2d 1013 (6th Cir. 1975), cert. denied, 425 U.S. 973, 96 S.Ct. 2170, 48 L.Ed.2d 796 (1976); *Shultz v. Wheaton Glass Co.*, 421 F.2d 259 (3rd Cir. 1970), cert. denied, 398 U.S. 905, 90 S.Ct. 1696,

26 L.Ed.2d 64 (1970); and for a comprehensive discussion see *Laffey v. Northwest Airlines, Inc.*, 185 U.S.App.D.C. 322, 567 F.2d 429 (D.C. Cir.1976), cert. denied, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

6. A rate that is paid to a reassigned worker that is higher than the rate paid to workers in the job classification to which the worker has been reassigned.

cases are not helpful to plaintiff's position in that they all involve male employees who were *hired* to perform the *same* jobs as the female employees with the excuse proffered for the wage differential being that the males were occasionally called upon to do other jobs. Here, Mr. Williams was not hired to be a film assembler and an occasional cameraman. He was hired on the sole basis to be a cameraman, although business reasons necessitated a temporary reassignment to the film assembly department. The only conclusion that the evidence supports is that the company hired a cameraman in advance of actual need for his services and assigned him to a job function in the interim in order to gain some useful productivity out of him. As such, this Court holds that the wage differential was based upon a factor other than sex, and therefore, it was permissible under the EPA.

### III.

### CONCLUSIONS OF LAW

The Court makes the following conclusions of law:

1. This Court has jurisdiction over the parties and the subject matter of this litigation.

2. Defendant did not contravene the provisions of the EPA in paying Mr. Sam Williams the cameraman rate and plaintiff the film assembler's rate while Mr. Williams was on temporary assignment in defendant's film assembly department.

### IV.

### CONCLUSION

For the reasons above-stated, it is hereby

ORDERED that the relief prayed for in plaintiff's complaint be, and it is hereby, denied, and that judgment in this cause be awarded in favor of defendant.

IT IS SO ORDERED.